### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1874, IN THE FIFTY-
NINTH YEAR OF THE STATE.

---

WESTON *v.* JOHNSON ET AL.

SPECIAL FINDING.—Unless a special finding of facts and conclusions of law be made at the request of a party to the action, it will be regarded as a general one.

NEW TRIAL.—On a motion for a new trial, a cause assigned was, "that the decision was not sustained by sufficient evidence."

*Held,* that it sufficiently appeared that the word " decision," as used, was synonymous with "finding;" the difference was merely technical.

WILL.—*Legacy.*—*Ademption of.*—The doctrine of the ademption of legacies by advancement to the legatee by the testator, in his lifetime, has no applica-tion to specific legacies or to devises of real estate.

From the Porter Circuit Court.

*S. J. Anthony, F. Church, S. E. Perkins,* and *S. E. Per-kins, Jr.,* for appellant.

*T. J. Merrifield,* for appellees.

WORDEN, J.—This was an action by the appellees against the appellant, to recover the following land, situate in Porter county, Indiana, viz.: The south-east quarter of section twenty-two, in township thirty-seven, north of range five west.

Issue, trial by the court, finding, and judgment for the plaintiffs, a motion for a new trial on behalf of the defendant having been overruled; exception.

The court made what purports to be a special finding of the facts, and the conclusions of law thereon; but as this does not appear to have been done at the request of either of the parties, the finding can only be regarded as a general one. *The Board of Comm'rs of Tippecanoe County* v. *Reynolds*, 44 Ind. 509, and cases there cited.

The defendant assigned as a reason for a new trial, "that the decision was not sustained by sufficient evidence."

Other reasons were assigned, which need not be noticed.

It is objected that this reason for a new trial is insufficient, because the word "decision" is used, instead of the word "finding." We think the word was used as synonymous with "finding," inasmuch as the insufficiency of the evidence to sustain it was pointed out. It could not have had reference to the conclusions of law from the facts found, because the sufficiency or insufficiency of the evidence has nothing to do with the conclusions of law. The plain import of the reason assigned is, that the finding of facts by the court was not sustained by the evidence. It would, in our opinion, subvert rather than promote the ends of justice to hold the reason insufficient.

The evidence is in the record, which we now proceed to consider, together with the questions arising upon it.

The plaintiffs are the heirs at law of Carey Johnson, deceased. On April 14th, 1852, Carey Johnson, who then resided in Hamilton county, Ohio, owned the land now in dispute, as well as the south-west quarter of section twenty-three, in the same township and range. These two quarter sections, it will be seen, adjoin each other, the quarter in section twenty-three lying immediately east of that in section twenty-two, the quarter in controversy in this suit. On the day last named, Carey Johnson made his last will and testament, by which he devised to the defendant, Francis Weston, the land in controversy herein, viz., the quarter lying in section twenty-two; he also devised to Carey J. Munger the quarter lying in section

twenty-three.   Francis Weston and Carey J. Munger were the grandchildren of the testator.

It is said, in the brief for the appellees, that at the time of the execution of the will the father and mother of Francis Weston were dead, and that he was living with his grandfather as one of his children.   This, however, we do not find sustained by the evidence.   It does not appear from the evidence, unless we have inadvertently overlooked it, whether his father was dead or living at that time.

On August 1st, 1853, Carey Johnson, then living, and his wife, executed a warranty deed, for the specified consideration of one hundred dollars, to the appellant, Francis Weston, for the quarter section of land lying in section twenty-three, the piece which, by the will, had been devised to Carey J. Munger. It appears that, at the time this deed was executed, the appellant was living at his grandfather's and had been a member of his family about a year.   The appellant paid no money or other valuable consideration for the conveyance to him.   There is no evidence in the case showing, or tending to show, that the testator intended that the land thus conveyed by him to the appellant should be received in lieu of that devised to him. It is not shown that the testator, at the time of the execution of the deed or at any other time, said anything on the subject; nor is there any evidence showing his intent in this respect.   The appellant, however, was asked the following question, and gave the appended answer, viz.:

"Was not the land deeded to you as an advancement of that which you were to take by the will, and did you not so understand it at the time?

"Ans. I did so understand it at the time."

Carey Johnson having died, the appellant took possession of the land in controversy, in the year 1870, claiming it under the will.   The appellees, the plaintiffs below, claim it as the heirs at law of the deceased.

The will of the deceased gives the land to the appellant in terms; and there is no objection made to the will by the appellees, either in respect to its terms, mode of execution, or the

probate thereof. But the appellees claim that the conveyance, by the testator in his lifetime, of the piece of land in section twenty-three, to the appellant, operated as an ademption or satisfaction of the devise to him of that in controversy, and, hence, that the latter parcel descended to the heirs at law.

The principle on which the appellees base their claim is thus stated by Mr. Justice STORY: "The second class may be illustrated by reference to the case, where a parent, or other person *in loco parentis*, bequeaths a legacy to a child or grandchild, and afterward in his lifetime, gives a portion, or makes a provision for the same child or grandchild, without expressing it to be in lieu of the legacy. In such a case, if the portion so received, or the provision so made, on marriage or otherwise, be equal to, or exceed, the amount of the legacy; if it be certain, and not merely contingent; if no other distinct object be pointed out; and if it be *ejusdem generis;* then it will be deemed a satisfaction of the legacy, or, as it is more properly expressed, it will be an ademption of the legacy. If the portion or provision be less than the amount of the legacy, it will at all events be deemed a satisfaction *pro tanto;* and, if the difference between the amounts be slight, it may be deemed a complete satisfaction or ademption. But if the difference be large and important, there, the presumption of an intention of substituting the portion for the legacy will not be allowed to prevail." Story Eq., sec. 1111.

The ground of the doctrine is stated in the next following section to be, " that every such legacy is to be presumed as intended by the testator to be a portion for the child or grandchild, whether called so or not; and that, afterward, if he advances the same sum upon the child's marriage, or on any other occasion, he does it to accomplish his original object, as a portion; and that, under such circumstances, it ought to be deemed an intended satisfaction or ademption of the legacy, rather than an intended double portion."

· The same author, in section 1113, thus speaks of the doctrine: "It may be added, that courts of equity make out this sort of doctrine, not upon any clear intention of the tes-

tator anywhere expressed by him, but they first create the intention, and then make the parent suggest all the morals and equities of the case, upon their own artificial modes of reasoning, of which it is not too much to say, that scarcely any testator could ever have dreamed."

But whatever may be thought of the doctrine, it is thoroughly established in English and American jurisprudence. The cases based upon it are numerous in both countries, but no collection of them will be attempted in this opinion.

We proceed to consider whether the case in judgment falls within the doctrine stated. We may observe that the evidence tends to show that the two pieces of land are of nearly equal value, so that the slight disparity in that respect would not prevent the operation of the principle, if otherwise applicable. Here, we may observe that we attach no importance to the fact that the appellant, when he took the deed, understood that the land conveyed to him was an advancement of what he was to take by the will. His understanding in that respect can in no way affect the question involved. The intention of the testator is the important consideration, and that intention does not appear. Suppose the case were one of a bequest of a sum of money, where the principle would be clearly applicable, and the sum bequeathed had been advanced to the legatee by the testator in his lifetime, and the legatee had understood the advancement to be in addition to what he was to receive by the will, but the testator had understood it differently, the intention of the testator would clearly control, and not the understanding of the legatee.

The question, therefore, is a question of law arising upon the facts, without any evidence of the real intention of the testator, further than may be gathered from the facts, that by his will he devised to the appellant, his grandson, one piece of land, and afterward conveyed to him another piece, of equal quantity and about equal quality and value.

The rule is only applicable, as we have seen, where a parent, or one standing *in loco parentis*, makes the bequest. Great-uncles, uncles, grandfathers, or grandmothers or putative

fathers, are not to be considered *in loco parentum*, unless they have intended to assume the office and duty of a parent. Williams Ex'rs, 1204; Roper Leg. 382. " The test," says. the author last quoted, same vol., p. 385, " in those cases seems to be, whether the circumstances, taken in the aggregate, amount to moral certainty that a testator considered him-- self in the place of the child's father, and as meaning to dis- charge that natural obligation which it was the duty of a parent to perform, for that is the principle. The mere circumstance of a provision made by a relation being so usual without any intention to interfere with the relative obligation between parent and child, that no clear inference arises from such a provision that the testator meant to substitute himself *in loco parentis.*"

The evidence, as we have seen, does not show that the appellant's father was dead at the time of the execution of the will ; but if it did, that circumstance would not of itself be· sufficient to show that the testator intended to place himself *in loco parentis*, but it would be a circumstance to be consid- ered. Roper Leg. 386. Nor does the evidence show that at the time of the execution of the will the appellant lived with the testator, or was in any way a member of his family.. In short, the evidence does not show that the testator stood *in loco parentis*, and, therefore, does not show that the case comes within the principle relied upon.

We however regard this as a point of minor consequence, as there are other considerations involved, more fundamental in their character, which are decisive against the application of the doctrine sought to be applied to the case.

The devise to the appellant was of certain specific land, and was a specific devise, if, indeed, all devises of real estate are not to be regarded as specific. See Wigram Wills, 2 Am. ed., part 2, 339.

We are not aware that the doctrine of the ademption of lega- cies by subsequent advancement has ever been applied to specific legacies ; and if it is not applicable to specific legacies, it cer-- tainly cannot be to specific devises.

We are of opinion, from such examination as we have been able to give the authorities, that the doctrine has no application to specific legacies. The reason of the doctrine as applied to general legacies does not apply to specific legacies.

If a father by his will make a general bequest to his son, for example, of a thousand dollars, or a hundred head of sheep or cattle, no particular sheep or cattle being specified, so that any sheep or cattle would fill the bequest, this may well be deemed as intended for a portion for the son; and if the father in his lifetime give to the son a like sum of money, or the like number of sheep or cattle, it may well be assumed that he does it to accomplish his original object of giving the son a portion; and the courts will hold that the bequest is adeemed; otherwise the son would receive a double portion, when it is assumed that the testator intended that he should have but a single portion. But where a father bequeaths to his son a specific article of personal property, as a particular horse, a particular watch, book, or other article, pointing it out and identifying it, so that the legatee becomes entitled to the particular thing *in specie,* and not merely to any like thing, it cannot be said, nor has it ever been held, so far as we are advised, that the bequest is intended as a portion for the son. There are many motives besides an intent to give a portion, that may induce a father to give his child, by will, specific articles of personal property, or, indeed, specific parcels of real estate.

The doctrine, as applied to general legacies, cannot be practically applied to specific legacies at all, in some respects.

We have seen, that if the provision made subsequent to the will is less than the legacy, it will be a satisfaction *pro tanto.*

Suppose a father bequeath to his son a particular ten-thousand-dollar government bond, so identifying and describing it that the particular bond would pass to the legatee. But the father gives to the son in his lifetime nine thousand dollars in government bonds. Is the legacy in any part adeemed? It is conceived that the son must take the whole bond bequeathed to him, or no part of it. If, however, the testator had

bequeathed his son ten thousand dollars in government bonds, but no particular bond or bonds had been specified, the legacy therefore being general and subject to be discharged by any bonds of the description specified, the case would have been governed by the doctrine under consideration.

As before stated, we know of no case in which the doctrine of ademption by advancement has been applied to specific legacies. The elementary writers do not recognize its application to the latter class of legacies. Specific legacies are adeemed by the sale or destruction of the thing bequeathed in the lifetime of the testator. "In regard to the revocation of bequests of personal estate by ademption, the general rule is, that in order to complete the title of a specific legatee to his legacy, the thing bequeathed must, at the death of the testator, remain *in specie* as described in the will; otherwise the legacy is considered as revoked by ademption. For instance, if the legacy be of a specified chattel in possession, as of a gold chain, or a bale of wool, or a piece of cloth, the legacy is adeemed, not only by the testator's selling or otherwise disposing of the subject in his lifetime, but also if he should change its form so as to alter the specification of it, as if he should convert the gold chain into a cup, or the wool into cloth, or make the piece of cloth into a garment, the legacy shall be adeemed." 1 Jarman Wills, 4 Am. ed., p. 172, note 1.

In Roper Leg. 329, under the sub-title of "the ademption of specific legacies," it is said: "The word 'ademption,' when applied to specific legacies of stock or of money, or securities for money, must be considered as synonymous with the word 'extinction.' For it should be observed, that if stock, securities, or money, so bequeathed, be sold or disposed of, there is a complete extinction of the subjects, and nothing remains to which the words of the will can apply; for if the proceeds from such sale or disposition were to be substituted and permitted to pass, the effect would be (as expressed by a learned judge), to convert a specific into a general legacy. But with respect to general legacies not given as portions, the rule respecting ademption

depends upon different considerations. The intention of the testator is immaterial in the ademption of specific legacies, because the subject being extinct at the death of the testator, there is nothing upon which the will can operate; but it is otherwise in regard to general legacies which are payable out of the general personal estate; there the question whether any advancement by the testator in his lifetime to the legatee shall be considered an ademption or in substitution of the bounty given by the will must depend entirely upon the fact, that such was the testator's intention."

This whole paragraph seems totally inconsistent with the idea that a specific legacy can be adeemed by advancement in the lifetime of the testator. The word "ademption," when applied to specific legacies, he regards as synonymous with "extinction." Then the same author, in the same volume, at page 364, under the title "of general legacies, and their ademption," etc., discusses the subject of ademption by subsequent advancement. See, also, Wigram Wills, 360, 361, part 2.

In 2 Redfield Wills, 439, the doctrine of ademption by advancements is stated as applicable to general legacies.

In *Langdon* v. *Astor's Ex'rs,* 16 N. Y. 9, the doctrine of ademption by advancements was discussed and applied, but the learned judge who delivered the opinion of the court (DENIO, C. J.) remarked (p. 33): "In what I shall have to say upon this question, I shall assume that the legacy in question is not specific, but pecuniary and general." This remark would have been unnecessary, and, indeed, inappropriate, had it been supposed that both classes of legacies stood upon the same ground in this respect.

If, as before observed, a specific legacy is not adeemed by advancements, it follows, as we think, quite conclusively, that a specific devise of land is not adeemed by advancement. Moreover, we are not advised of any case in which the doctrine of ademption by advancement has been applied to devises of real estate.

In the case of *Davys* v. *Boucher,* 3 Y. & Col. Ex. 397, decided as late as 1839, it was said by ALDERSON, B., that as

far as his researches had extended, he did not find any instance of this principle having been extended to devises of real estate.

In Williams Ex'rs, 1202, the author says: "It should seem also, that the principle does not extend to devises of real estate," referring to the case in 3 Y. & Col. So, in 2 Red. Wills, 441, it is said, referring to the same case, that "the principle of ademption, by a subsequent portion, has not been applied to devises of real estate."

In the case of *Clark* v. *Jetton*, 5 Sneed, 229, 236, it is said by the court, that "this doctrine of ademption does not apply to real estate."

These are all the authorities upon the point that have come under our notice. The negative authorities are meagre, and, of themselves, inconclusive. But the absence of affirmative authority for the application of the doctrine to devises of real estate is conclusive that it is not applicable to them.

But the counsel for the appellees, in a well prepared and able brief, has suggested that Baron ALDERSON in supposing, as he did in the case cited from 3 Y. & Col., *supra*, that there was no case in which the principle had been applied to devises of real estate, was mistaken. Several cases are cited, in which it is claimed that the principle was thus applied. We proceed to examine them.

The first is that of *Williams* v. *Duke of Bolton*, 1 Dick. 405 ; 4 Drury & Warren, 225. It appears to have been decided in the case cited, that a gift of a rent-charge might be a satisfaction of a sum in gross charged upon land. This, however, is not in point. A sum of money charged upon land is not the land itself. The money, the subject of the legacy, is personal, and when it is paid the land is freed. The charging of it upon land is only a mode of securing its payment. These observations apply also to the cases of *Hartopp* v. *Hartopp*, 17 Ves. 185, and *Brudenell* v. *Boughton*, 2 Atk. 261.

The case of *Lechmere* v. *Earl of Carlisle*, 3 P. Wms. 211, was this : There was a covenant to settle lands of a certain value, and a subsequent purchase by the covenantor of lands of a

smaller value, which were, at the covenantor's death, undis-posed of, and which went by descent to the covenantee. It was held, that the land so purchased was a satisfaction *pro tanto.* We do not regard this case as at all in point. A covenant to settle lands is totally dissimilar to a devise of lands; so, also, is the descent of lands to one a different thing from a convey-ance of it to him. A similar case was that of *Wilcocks* v. *Wilcocks,* 2 Vern., part 2, 528.

The cases of *Rosewell* v. *Bennet,* 3 Atk. 77, and *Kirk* v. *Eddowes,* 3 Hare, 509, are no further in point than to show that the doctrine of ademption by advancement is not based upon the theory of a revocation of a will.

The case of *Bellasis* v. *Uthwatt,* 1 Atk. 497, is cited for the following observations of the Lord Chancellor: "In respect to the doctrine of satisfactions for money before due, the thing given in satisfaction must be of the same nature, and attended with the same certainty as the thing in lieu of which it is given, and land is not to be taken in satisfaction for money, nor money for land. It is true, here they are both of the same nature, both personal estates," etc.

This extract shows that the Chancellor was speaking of a case where a bequest was to be taken in satisfaction of money before due, and not where something advanced was to be taken as an ademption of the bequest. Besides this, both were per-sonal.

The remark put by way of illustration, that "land is not to be taken in satisfaction for money, nor money for land," by no means establishes the proposition, nor do we think it con-veys the idea that the doctrine of ademption, as applied to general legacies, applies to devises of land.

We have thus considered the authorities cited to show that the doctrine has been applied to devises of land. In our opinion, they do not show it.

From these considerations, we conclude that the doctrine of the ademption of legacies, by advancement to the legatee by the testator in his lifetime, has no application to specific lega-cies or devises of real estate.

It follows that the appellant's title to the land in contro-versy, under the will, is good, and that a new trial should have been granted.

The judgment below is reversed, with costs, and the cause remanded for a new trial.