GRISE, ADMINISTRATOR *v.* WEISS, ADMINISTRATOR ET AL.

[No. 26,939. Filed November 23, 1937.]

*Claude D. Carson,* for appellant.

*Miller Guy* and *Stanley S. Gilbert,* for appellees.

ROLL, J.—This action was brought by appellant together with Claude E. Weiss, administrator *de bonis non,* with the will annexed, of the estate of George H. Grise, deceased, John F. Grise and Clara M. Mangus as plaintiffs against Minnie V. Doering as defendant, wherein they requested a construction of the will of George H. Grise, deceased, to designate the priority and rights of the beneficiaries. The complaint was in the usual form, and set out in full a copy of said will. The items of the will relevant to the controversy are as follows:

"FIRST: My will is that all my just debts and funeral charges and expenses during my last sickness, shall, by my executor hereinafter named, be paid out of the first assets that may come into his hands as such Executor.

"SECOND: I give and bequeath to my son John F. Grise, the sum of Five Hundred ($500.00) Dollars, which bequest shall be the second item to be paid by my Executor hereinafter named out of any available assets in his hands after the payment of my just and legal debts, heretofore mentioned have been paid as directed.

"THIRD: I give and bequeath to my brother, James N. Grise, the sum of Three Hundred ($300.00) Dollars, which bequest shall be the second item to be paid by my Executor out of any available assets, after the payments heretofore have been enumerated have been paid, by my Executor as directed heretofore. I also give and bequeath to my brother, James N. Grise, all of my personal wearing apparel.

"FOURTH: I give and bequeath to the Trustees of the United Brethren Church in Christ, located at Bremen, Indiana, the sum of One Hun-

dred ($100.00) Dollars which shall be paid by my Executor out of any available assets which shall remain in his hands after the foregoing requests have been paid by him as directed.

"FIFTH: I give and bequeath to my daughter, Minnie V. Doering, nee Grise, the sum of Five Thousand ($5,000.00) Dollars, to equalize her with my other three children, to wit: John F. Grise, Charles H. Grise and Clara M. Mangus, to each of whom I have heretofore given an equal sum; the sum bequeathed herein to my daughter, Minnie V. Doering, nee Grise, shall be paid to her by my Executor out of any available funds that may be in his hands immediately after the bequest of the $500.00 is paid to my son, John F. Grise, mentioned in the Second Item of this will.

"In case any of my aforesaid children should die before my demise and are survived by any children, the share of such deceased child under this my last will and testament, shall be distributed among the living children of such deceased legatee, share and share alike.

"SIXTH: It is my will and request that the remaining personal property, after the portion devised to James N. Grise, my brother, has been separated from the rest of my personal property, the residue of the same shall be divided in four equal parts according to the value thereof and each of my four children named in this will shall receive one portion.

"The residue of all my property after the foregoing divisions have been made, I give and bequeath to my four children, John F. Grise, Charles H. Grise, Clara M. Mangus and Minnie V. Doering, share and share alike."

The court, at the request of plaintiffs, made a special finding of facts and stated conclusions of law thereon. The facts were stipulated and therefore there is no conflict or dispute as to the material facts. The special findings show that the decedent died testate on the 19th day of June, 1926, the owner of certain personal property consisting of stocks, bonds, money, and certain other personal property. The record does not show affirmatively that decedent owned any real estate.

The real controversy presented by this appeal centers around the court's conclusion of law No. 6, which was stated by the trial court as follows:

"6. That the order of settlement of the estate of George H. Grise, deceased, and payment of all debts and legacies shall be made as follows:

"A. The just debts, funeral expenses and expenses of last sickness of decedent and expenses of administration shall be first paid out of the assets now in the hands of the administrator de bonis non, with the will annexed, of said decedent.

"B. After the payment of the items enumerated in Conclusion Number 6-A, above, if there are funds left in his hands, said administrator shall then pay John F. Grise, legatee named in Item Number 2 of said Will, the sum of $500.00.

"C. After the payment of the items in Conclusion Number 6-A and the bequest in Conclusion Number 6-B, if there are then funds left in the hands of said administrator, he shall then pay the Clerk of this Court the sum of $300.00 for the use and benefit of the legal representative of the estate of said James N. Grise, deceased, legatee named in Item Number 3 of said Will.

"D. After the payment of the item in Conclusion Number 6-A, the bequest in Conclusion Number 6-B, and the bequest in Conclusion Number 6-C, if there are then any funds left in the hands of said Administrator, he shall then pay the Trustees of the United Brethren Church in Christ, legatee named in Item 4 of said Will, the sum of $100.00.

"E. After the payment of the items in Conclusion Number 6-A, the bequest in Conclusion Number 6-B, the bequest in Conclusion Number 6-C and bequest in Conclusion Number 6-D, if the said Administrator then has left in his hands any funds, he will pay to Minnie V. Doering, legatee, named in Item 5 of said Will, the sum of $5,000.00.

"F. The general legacies found in Items 2, 3, 4, and 5 of said Will, as hereinabove mentioned, shall not be paid on a pro rata basis. The legacy found in said Item 2 shall have a priority over the legacy in Item 3 and Item 5. The legacy found in Item 3 shall be next in priority and have a priority over the legacies found in said Items 4 and 5. The legacy found in Item 4 shall have a priority over

the legacy found in Item 5 and the legacy found in Item 5 shall have priority over the residuary legacies found in Item 6."

The legal questions here presented are stated by appellant in his brief as follows:

"1. Does the following portion of the sixth item of the will to wit:

'Sixth: It is my will and request that the remaining personal property, after the portion devised to James N. Grise, my brother, has been separated from the rest of my personal property, the residue of the same shall be divided in four equal parts according to the value thereof and each of my four children named in this will shall receive one portion.'

dispose of all of the personal property of which said deceased died the owner?

"2. Is said portion of item six a residuary clause, disposing of that portion of the personal property which remains after the payment of all rhetorically preceding gifts?

"3. Should the gifts made by the provisions of the will receive priority of payment, beginning with the first in rhetorical order and continuing rhetorically to the last?"

It is well to keep in mind some well established rules of law to be followed in construing wills.

It was said in *Grimes' Executors* v. *Harmon* (1871), 35 Ind. 198, 207:

"It is a well settled rule of construction, that all the parts of a will are to be construed together and in relation to each other, and so as, if possible, to form one consistent whole, and that words and limitations may be transposed, supplied or rejected, where warranted by the context or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's intention, however reasonable, in opposition to the plain and obvious sense of the language of the instrument. 1 Redf. on Wills, 430. It is our duty to place such a construction upon the will as will sustain and

uphold it in all its parts, if it can be done consistently with the established rules of construction of the law."

In *McCoy* v. *Houck* (1913), 180 Ind. 634, 99 N. E. 97, it was held that the intent of the testator was to be determined from the whole language of the instrument.

It has been said by this court so many times that we need cite no authority to support it, that the great and foremost purpose in construing wills is to ascertain and carry into effect the intention of the testator, and all technical rules must give way to this cardinal principle. *Cooper* v. *Hayes* (1884), 96 Ind. 386. In *Ridgeway* v. *Lanphear* (1885), 99 Ind. 251, 252, Judge Elliott, speaking for the court, said:

"The authorities agree that the great purpose in construing wills is to ascertain and carry into effect the intention of the testator. In opposition to this fundamental principle, all technical rules give way. *Cooper* v. *Hayes*, 96 Ind. 386, vide opinion 395; *Downie* v. *Buennagel*, 94 Ind. 228; *South* v. *South*, 91 Ind. 221 (46 Am. R. 591). It is true that wills are to be construed by technical rules, when purely technical terms are used, and there is nothing in the language with which they are associated showing that the testator intended them to have any other meaning; but where it clearly and distinctly appears that the testator did not intend to employ the terms in their technical sense, then the courts will not give them that meaning; *on the contrary, they will search for and affix to the terms employed the meaning which the testator intended they should receive.*" (Our italics.)

It is also well settled, as stated in *Reeder* v. *Antrim* (1917), 64 Ind. App. 83, 91, 110 N. E. 568, that:

"While the object of construing a will is to ascertain, and give effect to, the intention of the testator when possible so to do under the rules of law, yet the fact remains that the intention to be carried into effect by judicial interpretation of a will is

not necessarily or always the intention which existed in the mind of the testator when the will was executed, but is always that intention which is embodied in and obtained from the language of the will itself."

The intent of the testator must be sought by a consideration of the entire will and effect must be given every word and clause, if possible, and provisions apparently conflicting must be reconciled, if such result be rationally and reasonably attainable. The above rules we think furnish sufficient guide to the court in construing the will herein.

We will dispose of the most difficult question first, and that question relates to the proper construction to be given item six. Is the first paragraph of item six a residuary provision or is it a specific bequest giving all the personal property to decedent's four children, in specie? It is appellant's contention that said first paragraph of item six is not a residuary provision but is a specific bequest, in specie, of all of decedent's personal property, subject however to the payment of debts, cost of administration, etc., and also subject to the specific bequest set out in item three. While appellee contends that the first paragraph of item six is a general residuary clause, disposing of all the rest and residue of decedent's personal property after the items mentioned in all the preceding items have been paid.

There is no contention about the first item of the will. The debts of the testator, and the cost of administration, under the law must be paid first.

We are of the opinion that item six is not a general residuary provision as contended for by appellee. But instead, we agree with appellant that it is a specific bequest in specie, of all the property *embraced within its provisions*. A specific legacy is the gift of something which a testator, identifying it by a sufficient

description, and manifesting an intention that it should be enjoyed or taken in the state or condition indicated by that description, separates in favor of a particular legatee, from the general mass of his personal estate. In *Roquet, Admr.* v. *Eldridge* (1889), 118 Ind. 147, 149, 20 N. E. 733, the court quotes with approval from *Fielding* v. *Preston,* 1 De. G. & J. 438:

> " 'There have been attempts, in various cases, to determine the meaning of a specific legacy, and what is the test whereby such legacy may be distinguished from general bequests. There are objections to most of the definitions, but I think we are quite safe in treating that as a specific bequest which the testator directs to be enjoyed *in specie'*."

The court then said:

> "A legacy is specific when it can be satisfied only by the transfer or delivery of some particular portion of, or article belonging to the estate, which the testator intended should be transferred to the legatee in specie."

> "Lord Hardwicke said in *Ellis* v. *Walker,* Amb. 309, The courts lean against considering legacies as specific. Unless, therefore, it appears that the money or things to be transferred is so clearly identified and inherently described as that the legatee can say to the executor that all, or a portion of, the very fund or property in question was transferred by the will, the bequest will not be regarded as specific. *Sidebotham* v. *Watson,* 11 Hare 170."

It is clear we think that the $300.00 bequest to James N. Grise in item three would not come within the above rules. It is not described or identified so we could say that it was intended as a special bequest, and we so hold. But the "wearing apparel" mentioned in said item three, we are convinced, is a special bequest and should be delivered in specie, and we so direct. But what personal property did the testator

have in mind in item six is not so easily determined. The facts show that the testator owned at the time of his death certain stock in the Interstate Public Service Company, bonds of the Oliver Hotel Corporation and some cash in the bank. It will be observed that in the second, third, and fourth items of the will the testator directed the executor to pay the several legacies out of "any available assets," which shall remain in his hands, and in the fifth item he directs the $5,000.00 bequest to be paid out of "any available funds," in the hands of the executor. If the executor, by the sixth item of the will, intended to direct the executor to divide the identical stocks and bonds which he possessed, he would not have used the language adopted in the second, third, fourth, and fifth items above set out; for if the general bequests were paid out of any available assets or available funds remaining in the hands of the executor, he could not have delivered the identical bonds which he possessed at the time of his death. It will also be noted that he very definitely and specifically states the order in which the items are to be paid. So we say that the language used in the various provisions of the will and the order of payment of the various bequests argue very strongly to the effect that the testator did not intend by the sixth item to make a specific bequest of all his personal property. When we read closely the sixth item the meaning to be affixed to the phrase, "the rest of my personal property," becomes clear. He says that "the *remaining personal property, after the portion devised to James N. Grise,* my brother, *has been separated from the rest of my personal property,* the residue of the *same* shall be divided in four equal parts according to the value thereof and each of my four children named in this will shall receive one portion." It must be clear that the testator, in this item, was disposing of the residue of his *personal effects,* for he directs the "wear-

ing apparel" given to his brother mentioned in item three, *be separated* from the rest of his personal property. Such personal property as "wearing apparel" would not be commingled with his stocks and bonds, so as to necessitate a direction on the part of the testator to "separate" them from the rest of his personal property. As quoted above from the case of *Ridgeway* v. *Lanphear* (p. 252):

> "It is true that wills are to be construed by technical rules, when purely technical terms are used, and there is nothing in the language with which they are associated showing that the testator intended them to have any other meaning; but where it clearly and distinctly appears that the testator did not intend to employ the terms in their technical sense, then the courts will not give them that meaning; on the contrary they will search for and affix to the terms employed the meaning which the testator intended they should receive."

Applying this rule to the language used in the sixth item with all the other terms and items contained in the will, we think there can be no doubt that the testator was disposing of the rest and residue of his "personal effects"; that he intended that they should be divided into four equal parts and that each of his four children should have one such part, in specie. If this construction be given to the words "the rest of my personal property" the will in its entirety is consistent and workable, and we think gives effect to the express intention of the testator. The last part of the sixth item is a general residuary clause, and disposes of all the rest and residue of his property under this provision, after the bequests mentioned in items one, two, three, four, and five have been paid, and after the division of the personal effects have been divided and delivered in specie as directed in the first clause of item six, the rest and residue, if there be any, shall be divided as directed in the second paragraph of item six.

Now as to the priority of payment. We have no difficulty with the first and second items. The debts, cost of administration are, under the law, the first items to be paid. It is clear that item two is the next to be paid. What item shall be paid third is not free from difficulty. By item three it is stated that, "I give and bequeath to my brother, James N. Grise, the sum of Three Hundred ($300.00) Dollars, which bequest shall be the *second* item to be paid by my executor out of any available assets, after the payments heretofore have been enumerated, have been paid by my Executor as directed heretofore." In other words he says that the three hundred dollars bequest to his brother James is to be the *second* item to be paid, after items one and two have been carried out. Then, if the bequest to James is to be the second item to be paid after item one and two have been paid we must look for the item that is to be the first item to be paid after items one and two are paid. We find the answer in item five. There the testator bequeaths to his daughter Minnie the sum of Five Thousand ($5,000.00) Dollars, and directs that it shall be paid to her "out of any available funds that may be in his hands immediately after the bequest of the $500.00 is paid to my son John F. Grise, mentioned in the Second Item of this will." So if the executor pays the daughter Minnie immediately after he pays John, then pays James, the brother, in which event the bequest to James N. Grise, the testator's brother, will be the *second* item to be paid after items one and two are paid. Therefore the order of payment is as follows: Item one together with the cost of administration shall be the first item to be paid. The second item to be paid is the bequest mentioned in item two of the will. The third item to be paid is the bequest set out in item five of the will. The fourth item to be paid is the bequest set out in item

three of the will. The payment of the second, third and fourth items to be paid is contingent upon the sufficiency of the assets to pay them in the order above directed. The wearing apparel mentioned in item three of the will is a specific bequest to James N. Grise, and should be delivered to him or his legal representatives. The residue of the testator's personal effects, mentioned in the first paragraph of said item six is a specific bequest in specie of the residue of this class of personal property and the executor is directed to divide such personal effects as decedent left after separating therefrom the wearing apparel of the testator, and deliver them in specie to the four children, each child to receive one portion. After the above bequests have been paid and executed, the residue, if any, is to be distributed to the four children share and share alike.

Conclusions of law numbered 1, 2, 3, 4, 5, 6, 6-A, 6-B are affirmed and should stand.

The trial court should restate its conclusions of law in 6-C, 6-D, 6-E, and 6-F, as follows:

6-C. After the payment of the item in conclusion number 6-A and the bequest in conclusion number 6-B, if there are then any funds left in the hands of said administrator, he will pay to Minnie V. Doering, legatee, named in Item 5 of said will, the sum of $5,000.00.

6-D. After the payment of the items in conclusion number 6-A, and the bequest in conclusion 6-B, and the bequest in conclusion 6-C, if there are any funds left in the hands of said administrator, he shall then pay the Clerk of this Court the sum of $300.00 for the use and benefit of the legal representative of the estate of said James N. Grise, deceased, legatee named in Item number 3 of said will.

6-E. After the payment of the items in conclusion number 6-A, the bequest in conclusion number 6-B, and the bequest in conclusion number 6-C, and the bequest in conclusion number 6-D, if there is any funds left in the hands of said administrator, he shall then pay to the Trustees of the United

Brethren Church in Christ, legatee named in item four of said will, the sum of $100.00.

6-F. The general legacies found in items 2, 3, 4, and 5 of said will, as hereinbefore mentioned, shall not be paid on a pro-rata basis. The legacy found in item 2 shall have priority over the legacy in item three, four, and five. The legacy found in item five shall have priority over the legacies found in items three and four of said will. That the legacy found in item three shall have priority over the legacy found in item four of said will.

That after the special bequest of the wearing apparel of the testator has been separated from the rest of the personal effects of the testator, and delivered to James N. Grise or his personal representative as directed in item three of said will, if there is then any personal effects of the testator's left or remaining in the hands of the said administrator, the same shall be divided into four equal parts according to value and one portion delivered in specie to each of the testator's four children.

After payment and distribution of the assets and property of the testator is made by the said administrator as above directed, if there is any other property of any kind or description, the same shall be distributed to the testator's four children or their heirs or legal representative, share and share alike.

The trial court may eliminate conclusion of law No. 7.

Cost of this appeal taxed against appellant.