**In re Trust Under the Last WILL and Testament OF Edwin F. SCHEELE.**

**Appeal of Susann M. KELLOGG.**

**No. 02A04–8611–CV–344.**

Court of Appeals of Indiana,
Fourth District.

Dec. 28, 1987.

Rehearing Denied Feb. 12, 1988.

Stephen R. Snyder, David C. Cates, Beckman, Lawson, Sandler, Snyder & Federoff, Syracuse, for appellant.

John F. Lyons, Thomas J. Markle, William F. McNagny, Dennis C. Becker, Barrett & McNagny, Fort Wayne, for appellee.

MILLER, Judge.

Susann Kellogg appeals from a summary judgment entered on Lincoln National Bank and Trust Company's petition for construction of the last will and testament of Edwin F. Scheele and for instructions on the disbursement of funds held in a trust created under that will. She raises the following issues on appeal:

1) whether the trial court erred in denying her motion to vacate the summary judgment, which was based on alleged newly discovered evidence;

2) whether the trial court erred in finding that no ademption by satisfaction occurred even though one month prior to his death, the testator gave 150 shares of stock to his son;

3) whether a genuine issue of material fact exists regarding ademption by extinction of the trust corpus;

4) whether a genuine issue of material fact exists regarding the testator's intent as to the disposition of his property;

5) whether the trial court erred in determining that the doctrines of equitable

deviation and approximation were unavailable to effectuate the testator's intent; and

6) whether the trial court erred in striking portions of her contentions which alleged that the predecessor trustee breached his fiduciary duty to the benefit of his heirs and to her detriment.

We affirm.

Edwin Scheele died on August 23, 1961, approximately one month after he had given 150 shares of stock in William Scheele & Sons, Inc. to his son, Richard. In his will, Scheele named his daughter, Susann Kellogg, and Richard as co-executors.[1] The will implemented an AB trust arrangement whereby all property qualifying for the marital deduction was to be placed in Trust A and the residue of the estate was to be placed in Trust B. Scheele's wife, Marcella, was to receive the net income from Trust B during her life; hence, the trust corpus was not to be distributed until her death. Richard was named as trustee for both trusts.

Upon distribution of the estate in 1965, the only property placed in Trust B was 495 shares of William Scheele & Sons, Inc. stock which had a value of $73,324.35. This stock was sold for $835,000.00 in May of 1975 when RKO Bottlers of Fort Wayne, Inc. purchased all of the issued and outstanding stock of William Scheele & Sons Company, Inc. The proceeds from the sale of the 495 shares were placed in Trust B. Richard died in 1975, and in July of that year Lincoln National Bank and Trust Company of Fort Wayne was appointed successor trustee.

Marcella Scheele died on July 9, 1983 and in November of that year, Lincoln National petitioned the Allen Superior Court to construe Edwin Scheele's will and to instruct it regarding disbursement of the trust corpus. The pertinent portions of Edwin Scheele's will provided:

EIGHTH: All property devised and bequeathed to my said son, RICHARD E. SCHEELE, as Trustee of Trust B, shall be held and administered by him as a separate trust as follows:

(1) I direct the Trustee to demand, collect, take and receive the income, rents and profits derived from Trust B and from such income, rents and profits the Trustee shall first pay all the necessary costs and expenses incident to the attendant upon the execution of this Trust, which, in the sole opinion and discretion of the Trustee, are properly chargeable against income but such charges which, in the sole opinion and discretion of the Trustee, are properly chargeable against the corpus of Trust B, may be charged against the corpus of, rather than the income of Trust B. The remainder of the income (hereinafter called "net income") shall be distributed as hereinafter provided:

(a) The Trustee shall pay the net income to the beneficiary or beneficiaries hereinafter designated in installments not less frequently than quarterly.

(b) The Trustee shall pay to my said wife, MARCELLA E. SCHEELE, during her lifetime, if she shall survive me and does not elect to take under the law instead of under this Will, the net income derived from the Trust Estate.

(c) Upon the death of my said wife or upon my death if she shall predecease me or if she survives me but elects to take under the law instead of under this Will, the Trustee shall divide and distribute the Trust Estate as follows:

(i) First to my son, RICHARD E. SCHEELE:

(A) Such stock of William Scheele & Sons Company, Inc., as I may own at the time of my death, but only up to a maximum of Seven Hundred Eighty (780) shares thereof, and

(B) All stock of Edwin F. Scheele Co., Inc., which I may own at the time of my death.

(ii) Then to my daughter, SUSANN M. KELLOGG:

(A) Such stock of William Scheele & Sons Company, Inc., as I may own at

---

1. Although Kellogg was named as co-executor, she did not serve.

the time of my death in addition to that given to my son by subparagraph (i)(A) of this subparagraph (c), but only up to a maximum of One Hundred (100) shares thereof; and

(B) Such amount of the remainder of my estate as will, together with the shares of stock given her by subparagraph (A) above, equal the value as finally determined for Federal estate tax purposes of the shares of stock given my son by subparagraph (i) of this subparagraph (c).

(iii) All of the rest, residue and remainder of the Trust Estate shall be divided equally between my said son, RICHARD E. SCHEELE and my said daughter, SUSANN M. KELLOGG, share and share alike;

provided, however, if at the time of distribution of the Trust Estate, as in this subparagraph (c) first provided, either my said son or my said daughter shall then be deceased leaving lawful issue then surviving, then in such event, the share of my estate to which my son or daughter would have been entitled if then surviving, shall go to the living lawful issue of such deceased son or daughter, *per stirpes* and not *per capita* absolutely, but in the event either my said son or my said daughter shall then be deceased leaving no lawful issue then surviving, then in such event, the share of my estate to which my son or daughter would have been entitled if then surviving, shall go to the other of my said son or daughter, if living, but, if not, then to the lawful surviving issue of such deceased son or daughter, absolutely but if neither my son nor daughter, or any lawful issue of either of them then be surviving, then to the heirs at law of the last survivor of them, whoever they may be; to be determined by and distribution to be made in accordance with the laws of descent of the State of Indiana, to HAVE AND TO HOLD the same to them and their heirs and assigns forever and this Trust shall thereupon be terminated. . . .

\*    \*    \*    \*    \*    \*

NINTH: In the conduct, investment, administration, operation, management, and distribution of Trust A and Trust B and the several shares thereof (except where Trust A is specifically excluded), the Trustee and the respective beneficiaries hereunder shall be governed and controlled by the following:

(1) Subject only to the faithful discharge of the Trustees['] duty to apply the proceeds and avails of the Trust Estate to the purposes herein specified, the Trustee may perform every act in the conduct, investment, administration, operation, management and distribution of the Trust Estate which individuals may perform in the management of like property owned by them free from any trust, and in the retention, investment and reinvestment of the Trust Estate, the Trustee shall be required only to use the care and skill under the circumstances then prevailing which men of prudence, discretion and intelligence ordinarily exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering income as well as safety of the principal of the Trust Estate, and the Trustee may exercise every right, power and privilege with respect to each item of property in the Trust Estate, real, personal and mixed, which individual owners of like property can exercise, including, but only by way of illustration and without limitation thereto, the following:

\*    \*    \*    \*    \*    \*

(c) To improve, lease (for any period of time whatsoever), partition, alter, pledge, mortgage, encumber, sell, transfer, convey, deliver, exchange, or otherwise dispose of or deal with all or any part of the securities or other property, real or personal, at any time composing the Trust Estate, for such consideration and upon such terms and conditions as the Trustee may deem proper, and no person, firm or corporation taking such property or securities by way of lease, pledge, mortgage, encumbrance, sale, transfer, conveyance

or exchange shall be required to see to the application of the purchase money or of the rents, issues, profits or proceeds of any such lease, pledge, mortgage, encumbrance, sale, transfer, conveyance or exchange or to inquire as to the authority of the Trustee in the premises.

Richard Scheele's children and Kellogg filed contentions in response to Lincoln National's petition. In her contentions, Kellogg argued that she should receive one-half of the funds contained in Trust B because the sale of the stock constituted an ademption which caused the provision for equal distribution between her and Richard to become controlling. She also argued that Edwin Scheele's intent was to provide for equal distribution between herself and Richard except to the extent Richard was to have control of the corporation. Because the sale of stock precluded Richard from controlling the corporation, Kellogg further argued that equity permitted reformation of the trust language to effectuate the deceased's intent of equal distribution. Lastly, Kellogg argued that Richard had breached his fiduciary duty to her by engaging in various acts of self-dealing.

In response to the last argument, Richard's children moved to strike the following three paragraphs from Kellogg's contentions:

3. That Richard E. Scheele was originally appointed trustee of both Trusts A and B under the Last Will and Testament of Edwin F. Scheele. That Richard E. Scheele was also personal representative of the estate of Edwin F. Scheele and in such fiduciary capacities determined which assets of the estate of Edwin F. Scheele would be placed in Trust A and which assets would be placed in Trust B. That in a breach of the trustee's fiduciary duty, Richard E. Scheele caused to be placed in Trust B nothing other than shares of stock of William Scheele & Sons Company, Inc. not exceeding seven hundred eighty (780) in number. By doing so the trustee engaged in a course of self-dealing actions violative of his fiduciary duties to the Trust and the beneficiaries of said Trust. That the beneficiary of a trust who is also the trustee cannot benefit by such self-dealing actions.

4. That the former trustee of Trust B under the Last Will and Testament of Edwin F. Scheele, engaged in a course of self-dealing conduct as trustee and majority shareholder of William Scheele & Sons Company, Inc. Such self-dealing conduct consisted of arbitrarily placing varying values on the shares of stock of William Scheele & Sons Company, Inc. during negotiations for the sale of said stock to RKO Bottlers of Fort Wayne, Inc. That such negotiations resulted in receipt of a considerably greater value per share for stock owned by Richard E. Scheele personally as compared to that stock owned by the Trust. That the beneficiary of a trust who is also trustee of that trust is not entitled to distribution of the assets of the trust as beneficiary having engaged in a course of self-dealing conduct which constitutes breach of the trustee's fiduciary duty.

\* \* \* \* \* \*

7. That Richard E. Scheele, as trustee of Trust B under the Last Will and Testament of Edwin F. Scheele, acted in his own interests and in antagonism to the interests of Susann M. Kellogg as beneficiary of said Trust. That such actions constituted an abuse of his trust, result in the presumption of bad faith and prevent distribution of any assets presently in the Trust to the trustee or those claiming through him.

The trial court ordered the last two sentences of paragraph three and all of paragraphs four and seven stricken.[2]

On July 30, 1985, Richard's children filed their motion for summary judgment. The trial court granted this motion on November 15, 1985 and instructed Lincoln National to distribute the entire Trust B corpus to Richard's children. It denied Kellogg's motion to correct errors and Kellogg appealed.

2. The trial court only struck two sentences of paragraph three in order to put the parties on notice that equitable deviation might be applicable to the case. (R. 128)

After filing the appeal, however, Kellogg discovered that one month prior to his death, Edwin had given 150 shares of William Scheele & Sons Company, Inc. stock to Richard. Leave was granted by this court for Kellogg to file a motion for relief from judgment. The trial court, however, denied Kellogg's motion to vacate the summary judgment and her second motion to correct errors. This appeal ensued.

■ Kellogg first argues that the trial court erred in denying her motion to vacate the summary judgment. This motion was based on the discovery that prior to his death, Edwin had given Richard 150 shares of William Scheele & Sons, Inc. stock. Kellogg does not contend that the gift could not have been discovered with due diligence. Rather, she contends that the due diligence standard should not apply when the motion is to vacate a summary judgment rather than to vacate a judgment which is entered after a full trial. The rule governing motions for relief from judgment provides in pertinent part:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including judgment by default, for the following reasons:
>
> (2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

Indiana Rules of Procedure, Trial Rule 60(B)(2). This rule applies not only to judgments rendered after a trial but also to default judgments and final orders. A summary judgment is a final order. *Carson v. City of Indianapolis* (1982), Ind. App., 430 N.E.2d 788, 790 (citing *Richards v. Crown Point Community School Corp.* (1971) 256 Ind. 347, 269 N.E.2d 5). Relief from a summary judgment therefore is governed by T.R. 60(B)(2). As a final or-

der, a party may be relieved from an entry of summary judgment on the basis of newly discovered evidence only when the evidence could not have been discovered by due diligence. T.R. 60(B)(2).[3]

■ While "due diligence" may differ depending upon whether evidence was discovered after summary judgment was entered or after a full trial was conducted, due diligence was not exercised in this case. Edwin's gift to Richard was documented or referred to in Edwin's Estate Tax Return (R. 164), in a letter from the District Director for the Internal Revenue Service in Indianapolis, (R. 254, 257, 260) and in a reconciliation of total gross estate statement which was prepared by the estate accountant (R. 264). These documents were part of those produced pursuant to a joint request for production which was filed on April 14, 1984. The attorney for Richard's children examined the documents on November 9, 1984 and copied those that referred to the gift. These documents were also made available and were received by Kellogg's attorney on January 23, 1985. Had due diligence been exercised, the gift of 150 shares of stock could have been discovered prior to Kellogg's first motion to correct errors. The trial court therefore did not abuse its discretion in denying Kellogg's motion for relief from judgment.

■ Even if the gift of stock could not have been discovered with due diligence, the trial court did not abuse its discretion in denying Kellogg relief from judgment. Newly discovered evidence warrants a new trial only where it is material, not merely cummulative or impeaching, not discoverable by due diligence and where it would reasonably and probably alter the result. *Mid–States Aircraft Engines v. Mize Co.* (1984), Ind.App., 467 N.E.2d 1242. Similarly, newly discovered evidence should warrant relief from summary judgment only where it creates a genuine issue of material fact or where the moving party is no longer entitled to a judgment as a matter of law. In this case, Richard's children remained

---

**3.** While this specific issue is essentially one of first impression, we have previously indicated that the due diligence standard would be applicable regardless of whether the motion for re-

lief from judgment followed a pre-trial proceeding or a full trial. *Mid–States Aircraft Engines v. Mize Co.* (1984), Ind.App., 467 N.E.2d 1242, 1246, fn. 3.

entitled to judgment as a matter of law despite the inter vivos gift of stock received by their father.

■ A bequest of stock in a specified corporation has been held to be a specific legacy. *New Albany Trust Co. v. Powell* (1902) 29 Ind.App. 494, 64 N.E. 640. In Indiana, the doctrine of ademption by satisfaction is not applicable to specific legacies. *Weston v. Johnson* (1874) 48 Ind. 1.[4] Furthermore, even if ademption by satisfaction was applicable to specific legacies or the testamentary gift of stock constituted a general rather a specific legacy, Richard's children would remain entitled to judgment as a matter of law. The doctrine of ademption is either inapplicable where the testamentary gift does not equal or exceed the inter vivos gift, *Clendening v. Clymer* (1861) 17 Ind. 155, or only adeems the testamentary gift *pro tanto. Weston v. Johnson* (1874) 48 Ind. 1. Even assuming the legacy was subject to being adeemed *pro tanto*, it would have been reduced only by 150 shares. Because Richard was entitled to 780 shares, Kellogg would not be entitled to any of the proceeds from the sale of the 495 shares of stock which were in Trust B had the inter vivos gift to Richard not been discoverable with due diligence and had the doctrine of ademption by satisfaction been applicable to this case. The trial court therefore properly denied Kellogg's request for relief from the summary judgment.

■ Kellogg next contends that a genuine issue of material fact exists regarding whether the stock placed in Trust B was adeemed by extinction.[5] While Kellogg claims the stock was extinguished in 1975 when Richard, as trustee, sold it, she provides no authority for the proposition that ademption by extinction occurs when a tes-

tamentary trustee disposes of the trust res after the testator's death. The issue therefore is waived. Ind.Rules of Proc., Appellate Rule 8.3 (A)(7). Furthermore, ademption by extinction has been defined as an act which causes a legacy to become inoperative because the subject matter of the legacy has been withdrawn or disappeared during the testator's lifetime. *Pepka v. Branch* (1973) 155 Ind.App. 637, 294 N.E. 2d 141. We therefore hold that ademption by extinction can only occur where, at the date of his death, the testator is no longer vested with the property interest he bequeathed by will. Edwin had a vested interest in more than 780 shares of William Scheele & Sons Bottling Co., Inc. stock at the time of his death. As the stock was in existence at the time of Edwin's death, there is no genuine issue of material fact as to whether the gift of stock had been adeemed by extinction.

Kellogg next contends that a genuine issue of material fact exists regarding Edwin's intent as to the disposition of his property. The basis of her argument is that paragraph 8, section C, when read as a whole, evidences that Edwin intended to divide his property equally between her and Richard but to do so in a manner which would have given Richard control of William Scheele & Sons Bottling Co. Inc. She further argues that due to the sale of stock in 1975, the intent to give Richard control of the corporation can no longer be effectuated and therefore the proceeds from the sale should be divided so that she receives one-half and Richard's children receive the other half.

■ Even assuming, however, that such a division of stock proceeds was Edwin's intent, we cannot give effect to a testator's general plan for equality when

---

4. "A legacy is specific when it can be determined only by delivery of some particular portion of, or article belonging to, the estate which the testator intended should be transferred to the legatee *in specie." Key v. Sneed* (1980), Ind.App., 408 N.E.2d 1305, 1307 (citing *Grise v. Weiss* (1937) 213 Ind. 3, 11 N.E.2d 146). "A general legacy has been defined as a bequest out of the general assets of the testator's estate, such as a gift of money or other things in quantity not in any way separated or distinguished from

other things of the same kind." Id. (Citing *In re Estate of Brown* (1969) 145 Ind.App. 591, 252 N.E.2d 142, *overruled on other grounds, Pepka v. Branch* (1973) 155 Ind.App. 637, 294 N.E.2d 141).

5. Ademption by extinction is applicable only to specific legacies. *Pepka v. Branch* (1973), 155 Ind.App. 637, 653, 294 N.E.2d 141, 150.

doing so would require us to set aside the testator's clearly expressed intent as to the method of accomplishing his plan. 96 C.J.S. *Wills* § 698, p. 68 (1957). *See also Redpath v. Auchincloss* (1946), 132 Conn. 690, 696, 47 A.2d 315, 317–318. Although Kellogg argues that the doctrines of equitable deviation and approximation provide methods for effectuating her interpretation of Edwin's intent, we disagree.

■■■■ The doctrine of equitable deviation, as codified by statute, permits deviation from the administrative terms of the trust where circumstances unknown or unforseen by the testator have occurred. IND.CODE 30–4–3–26; *Sendak v. Trustees of Purdue University* (1972), 151 Ind.App. 372, 378, 279 N.E.2d 840, 844. This doctrine cannot be applied to this case for two reasons. First Kellogg does not request deviation from administrative terms of the trust, but deviation from the method of distribution set forth by Edwin Scheele. Second, the sale of stock not only was forseen by Edwin Scheele but authorized by him under Paragraph 9(1)(c) of his will. The trial court therefore properly refused to apply the doctrine of equitable deviation to this case.

■■■■ While the doctrine of approximation permits deviation from the terms of a trust in order to effecuate the testator's intent, the doctrine has not been uniformly applied by the jurisdictions which recognize it. Some jurisdictions have applied the doctrine only to charitable trusts and therefore equate the doctrine to that of cy pres. *See eg., Mastin v. First National Bank of Mobile, Inc.* (1965), 278 Ala. 251, 177 So.2d 808 (applying approximation to a charitable trust to avoid the rule against perpetuities); *Tumlin v. Troy Bank & Trust Co.* (1952), 258 Ala. 238, 61 So.2d 817 (applying approximation to a charitable trust to avoid rules against accumulation and perpetuities); *Bonner v. Board of Trustees* (1966), 248 La. 915, 182 So.2d 664; *Campbell v. Board of Trustees of James Barry–Robinson Home for Boys* (1979), 220 Va. 516, 260 S.E.2d 204. While other jurisdictions have applied the doctrine to private trusts, they have done so only to avoid the harshness of the rule against perpetuities. *See eg., Estate of Grove* (1977), 70 Cal.App.3d 355, 138 Cal.Rptr. 684; *In re Ghiglia's Estate* (1974), 42 Cal.App.3d 433, 116 Cal.Rptr. 827; *In re Chun Quan Yee Hop's Estate* (1970), 52 Hawaii 40, 469 P.2d 183; *May v. Hunt* (1981), Miss., 404 So.2d 1373; *Carter v. Berry* (1962), 243 Miss. 321, 140 So.2d 843; *Edgerly v. Barker* (1891), 66 N.H. 434, 31 A. 900; *Rekdahl v. Long* (1967), Tex:, 417 S.W.2d 387; *Berry v. Union National Bank* (1980), 164 W.Va. 258, 262 S.E.2d 766. Our supreme court has apparently rejected the doctrine's application to private trusts for such purposes. *Merrill v. Wimmer* (1985), Ind., 481 N.E.2d 1294, *vacating Merrill v. Wimmer* (1983), Ind. App., 453 N.E.2d 356. Further, we have not found any case in which a court has applied the doctrine to permit deviation from the testator's express method of distribution so that an alleged general plan for equality could be effectuated. We therefore conclude that the doctrine of approximation is inapplicable in such cases and that the trial court properly refused to apply it to this case.

■■■■ Lastly, Kellogg argues that the trial court erred in striking the last two sentences of paragraph three and paragraphs four and seven from her contentions. The last two sentences of paragraph three alleged that Richard breached his fiduciary duty by placing nothing but shares of William Scheele & Sons, Inc. stock in Trust B. Paragraph four alleged that Richard breached his fiduciary duty by selling personally owned stock at a higher per share value than the stock placed in Trust B. Paragraph seven merely alleged that Richard's actions constituted a breach of trust and prevented distribution of trust assets to anyone claiming under him. These contentions were properly ordered to be stricken or Kellogg has failed to clearly show she was prejudiced by their striking.

A trial court may order stricken any "insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter." Ind.Rules of Procedure, Trial Rule 12(F). Kellogg's contention that Richard abused his discretion by placing only

William Scheele & Sons stock in Trust B is an insufficient claim. Assuming that such an act constituted a breach of fiduciary duty, the act of deciding what was to be placed in Trust B was performed by Richard in his capacity as executor of the estate rather than in his capacity as trustee of Trust B. Kellogg, as a beneficiary, could and should have asserted her breach of fiduciary duty claim when Richard petitioned the probate court for final distribution of the estate and submitted his final accounting. Any claim of wrongful distribution therefore is barred by the principle of res judicata. *See Estate of Holland* (1974), 84 Misc.2d 922, 377 N.Y.S.2d 854. The last two sentences of paragraph three therefore were properly stricken as constituting an insufficient claim.

Paragraph four alleged that Richard breached his fiduciary duty by selling stock he owned personally at a higher per share value than the stock placed in Trust B. Reversal of a trial court's decision to strike an allegation, however, is warranted only where prejudicial error is clearly shown. *Cua v. Ramos* (1982), Ind., 433 N.E.2d 745, 752 (citing *Smith v. Midwest Insurance Co.* (1972), 154 Ind.App. 259, 264, 289 N.E.2d 788, 791). As Kellogg is not entitled to any of the proceeds in Trust B, she has not been harmed by Richard's sale of stock in Trust B at an allegedly lesser price than stock which he owned personally. Kellogg therefore has failed to clearly show that she was prejudiced by any error the trial court may have committed in striking paragraph four.

Paragraph seven concluded that Richard's actions prevented distribution of the trust proceeds to anyone claiming through him. We have held that the alleged breach of fiduciary duty contained in paragraph three was an insufficient claim and that Kellogg was unharmed by the alleged breach of fiduciary duty contained in paragraph four. As such, the conclusion contained in paragraph seven is unsupportable and therefore is immaterial. The trial court did not commit any reversible error in striking the last two sentences of paragraph three and paragraphs four and seven.

Affirmed.

BUCHANAN and CONOVER, JJ., concur.