LUERY *v.* ADDINGTON ET AL.

[No. 28,361.   Filed January 16, 1948.]

*Herman N. Hipskind,* of Wabash, and *Levinson, Becker & Peebles,* of Chicago, for appellant.

*Albert H. Cole, Jr.,* and *Albert Harvey Cole,* both of Peru, for appellees.

GILKISON, J.—From the record it appears that Michael Luery died testate January 8, 1940. (His estate was finally settled in April, 1942.) The will created two trusts, one under Item VI and the other under Item VIII, which we shall refer to hereafter as Trust VI and Trust VIII, respectively. He also left his widow, the appellant, Frances K. Luery, surviving him as his sole and only heir at law.

The original corpus of Trust VI consisted of 225 shares of the Class A common stock of American Rock. Wool Corporation, an Indiana corporation, and 124-6/9 shares of Class A common stock of American Rock Wool Corporation, a New Jersey corporation. The two corporations were in reality a single enterprise and were merged in August, 1943. The Indiana corporation is the surviving corporation.

The will provided, with respect to Trust VI, that, ". . . Frances K. Luery shall receive all of the net income from the dividends declared and paid on said stock for and during her natural lifetime . . . . Upon her death said stock shall be transferred by my said Trustees to the following persons and in the following proportions: To James R. Addington, one-third thereof; to Peter Jocelyn Westervelt, one-third thereof; to my nephew, Alfred Luery, Jr., one-sixth thereof; and to my nephew, Robert Luery, one-sixth thereof." The will further provided, with respect to Trust VI, that,

"(d) In the event any other property, or cash, or its equivalent, is received in exchange for said stock my said Trustees shall invest the funds derived from said property whenever it is con-

verted into cash in sound bonds, preferably obligations of the United States Government, or of State Governments, or any sub-division thereof, or municipal obligations and shall pay the net income therefrom to my wife during her lifetime and upon her death the balance shall be distributed as follows: To James R. Addington, one-third thereof; to Peter Jocelyn Westerfelt, one-third thereof; to Alfred Luery, Jr., one-sixth thereof; and to Robert Luery, one-sixth thereof."

The original corpus of Trust VIII, into which passed the residuary estate, consisted of 83 shares of Class B Common Stock (non-voting) of American Rock Wool Corporation, a New Jersey corporation. The will provided, with respect to said Trust VIII, that the corpus ". . . shall be invested by my Trustees and my wife, Frances K. Luery, shall receive the net income therefrom during her lifetime and upon her death she shall have the right to will, bequeath and devise one-half of the said remainder to whomsoever she sees fit and the other one-half of said remainder I will and devise to my nephew, Alfred Luery, Jr., of Plainfield, New Jersey, to my nephew, Samuel Francis Lewis, of Oak Park, Illinois, to my nephew, Robert Luery, of Escanaba, Michigan, and to my nephew, James C. Waller, of Chicago, Illinois, share and share alike, and should any of said persons, other than my said wife, mentioned in this paragraph of my said will as legatees and beneficiaries die prior to my death, then the share which said legatee and beneficiary would have taken had he survived me shall be divided among the heirs of such deceased beneficiary under the laws of descent of the State of Indiana, now in force and effect."

The 255 shares of Class A Common Stock of American Rock Wool Corporation (Indiana) (both the record and the briefs of the parties use the number of these

shares sometimes as 225 and sometimes as 255) held by the Trustees of Trust VI prior to the merger constituted a majority of the voting stock of the Indiana corporation, and the Trustees, by virtue of their ownership of said shares, controlled the corporation. The control was not disturbed by the merger, and the 2,550 shares of Class A Common Stock of the surviving corporation which the Trustees received as a result of the merger also constituted a majority of all of the voting stock of the corporation.

In January 1945 (effective July 1, 1944) the Trustees of Trust VI and Trust VIII with appellant's consent exchanged the stock which comprised the entire principal of the Trusts for $50,000 cash and $350,000 principal amount of First Mortgage 5% Serial Notes of American Rock Wool Corporation ($268,000 principal amount of the notes was received in Trust VI and $82,000 in Trust VIII). The transaction was carried out pursuant to authorization granted to the trustees of the several trusts by an order and decree entered by the Wabash Circuit Court in the matter of each of the two trusts at the September term in 1944. The petitions in the two trusts, pursuant to which the orders and decrees were entered, set forth the following as the sole considerations motivating the exchange (paragraphs 9 and 13 of the petition filed in Trust VI are herewith quoted. Identical language is found in paragraphs 6 and 11 of the Trust VIII petition) :

"9. That under the terms of Item VIII of the will of Michael Luery, deceased, Frances K. Luery, widow of said decedent, who is one of the trustees herein was to receive the net income from this trust, during her lifetime, and that the said Frances K. Luery is now living and that she has employed counsel to represent her interest, and has made demands upon the corporation for dividends and to be represented by a director of her own

choosing on the Board of Directors of the Corporation, and has made other demands by reason of the fact that the corporation has not paid dividends which she believes she should receive from the property held in trust by these trustees. That by reason of the conflicting interests, these trustees believe that it will be to the best interests of said trust and the persons interested therein as beneficiaries to exchange the shares of stock now held by this trust for securities that will bear a fixed rate of interest, and that will not be variable in their returns of earnings to the trust."

"13. That in the opinion of the undersigned, it would be to the best interests of the trust to effect said exchange, because the amount to be received in the exchange after the payment of income taxes is in excess of the present book value of the stock, would give this trust a secured and fixed earning in place of an earning of an uncertain or speculative nature, and would remove the cause of the dispute between the life annuitant, Frances K. Luery, and the residuary beneficiaries of the Trust."

The notes in the principal amount of $350,000, and the indenture pursuant to which they were issued provided for serial maturities at the rate of $25,000 per annum, commencing July 1, 1950, and annually thereafter. It was also provided that the debtor should have the privilege of prepaying the notes, in whole or in multiples of $25,000 principal amount, on any interest payment date. As a condition to the exercise of such prepayment privilege, however, the debtor was required to pay a premium in an amount which would vary in accordance with the length of the period during which the prepaid notes would otherwise run and during which the trusts, but for such prepayment, would receive 5% interest. It was thus provided that the premium should be 10% of the principal amount of the notes prepaid, less one-half of 1% for each year or

fraction thereof subsequent to July 1, 1945, that the said notes were outstanding.

Within two years after the effective date of the said exchange, the entire $350,000 principal amount of the notes was prepaid by the corporation pursuant to the provisions of the indenture. Upon such prepayment the corporation paid to the trustees of the two trusts an aggregate of $33,000 in premiums for the privilege of relieving itself of further obligation to pay interest upon the notes.

Separate intermediate accounts were filed by the trustees of each trust on September 18, 1946, pursuant to § 2 of Acts 1945, ch. 157, § 6-2602, Burns' 1933 (Supp.). Appellant filed separate objections and exceptions to these accounts, agreeable with § 6-2605, Burns' 1933 (Supp.), the pertinent part of which is as follows:

"(a) The life tenant does not by these objections complain of the action of the corporation in prepaying the Notes and thus relieving itself of an obligation to pay 5% interest at a time when money is plentiful and interest rates are generally low, although she is not unaware of the anomalous situation which is presented by the fact that at least two of the trustees (Messrs. Addington and Plummer) in their capacities as officers and directors of the corporation, failed to take any action to prevent the destruction of the source of income of the trusts for which they were also acting as trustees. The life tenant does, however, by these objections complain of the fact that the entire premium of $33,000 which was paid by the corporation and received by the trustees in lieu of the income which would otherwise have accrued to the trusts in the form of interest on the Notes, has been credited to principal and not to income."

"(b) In summary of her position with respect to the said redemption premiums, the life tenant maintains that the express purpose and intent of the exchange of stock in the American Rock Wool

Corporation for the Notes, as hereinbefore described, was to resolve the conflict between the life tenant and the remaindermen respecting the payment of dividends on the said stock and to assure the life tenant a fixed income of 5% on the Notes until their respective maturity dates; that because of the almost immediate redemption of said Notes and the reinvestment of the proceeds at a necessarily lower yield, the income which the life tenant would have received had the Notes remained outstanding until their respective maturity dates has been substantially reduced; that the premiums paid upon redemption of the Notes are in essence compensation for the loss of future interest resulting from the redemption of the Notes; that the premiums are consequently not accretions to principal but part of *income,* to which, under the will of her late husband, the life tenant is entitled during her lifetime; and that under all the circumstances of this case, justice requires that the said premiums be credited to income, be placed in a suspense income account, and be disbursed to the life tenant, periodically and so far as they will stretch, to make up the difference between the 5% which would have been earned on the redeemed Notes and the amount per annum actually earned through reinvestment of the $350,000 principal amount of the Notes."

The trustees of Trust VI (except the appellant) filed a demurrer to so much of the objections and exceptions as excepts to the crediting by the trustees to the principal of said trust the premiums aggregating $25,320 received upon the redemption of the First Mortgage 5% Serial Notes of American Rock Wool Corporation. The appellee, Robert Luery, filed a similar demurrer with respect to the objections and exceptions filed to the intermediate account, crediting $7,680, received as premiums upon the redemption of the First Mortgage 5% Serial Notes of American Rock Wool Corporation, to the principal or *corpus* of the trust VIII.

The demurrers were sustained.

On June 18, 1947, by agreement of the parties, the causes were consolidated for finding, judgment and decree.

The objector and exceptor refusing to plead further, judgment was rendered in favor of the trustees, among other things, that the premium received from the redemption of the First Mortgage 5% Serial Notes of American Rock Wool Corporation, aggregating $33,000, was properly allocated to the principal of the trusts and not to income.

From this judgment the appeal is taken.

The errors assigned are the ruling on the demurrers; and the judgment ordering the premiums received allocated to the corpus of the trusts. The two assigned errors therefore present a single question, viz: Should the premiums received, from the redemption of the notes which then constituted the *corpus* of the trusts, have been allocated to the *corpus* of the trusts, or to income?

Appellant contends that the premiums paid were intended to be compensation for the loss of future interest on the notes—an anticipation of future income—and should have been treated as trust income. They rely upon a number of cases in other jurisdictions, among them we note, *Lang* v. *Mississippi Valley Trust Co.* (1939), 343 Mo. 979, 124 S. W. (2d) 1198. This case was concerning a 48 year lease on a building and grounds in St. Louis. After considering many of the authorities cited including *Archambault's Estate* (1911), 232 Pa. St. 347, 81 A. 314, the court quoted with approval from *Dickson* v. *Allen* (Mo.) 195 S. W. 698, at page 702, as follows:.

"The authorities seem to be practically unanimous in holding that money collected by trustees as damages done to or compensation paid for loss or injury to the corpus of the trust estate, in equity,

becomes substituted trust capital; and not income therefrom, and this seems to be so even though the amount collected was greater than the damage, loss or injury sustained by the corpus."

The factual situation of the Lang case was different from that in the instant case but we think this statement of applicable law is correct and that it adds some light on the rule that should prevail in this case.

In *Old Colony Trust Co.* v. *Comstock* (1935), 290 Mass. 377, cited by both appellant and appellee, trustees purchased, at a premium, bonds as an investment for a part of the trust fund. They then ascertained the actual net income from the bonds, based upon the premium, the rate of interest and the date of maturity, and paid the net income thus ascertained to the life tenant and retained the difference between the net income thus ascertained and interest in fact received as an accumulating fund which at the maturity of the bond would leave the original capital of the trust unimpaired. The court said at page 379,

"This is termed amortization of the amount paid as premium on the bonds purchased. Such amortization has been held to be a proper method of accounting for trustees in this Commonwealth."

Authorities are then cited and discussed at length, including In re: *Account of Houston's Trustees,* 19 Del. Ch. 207, 213, 165 A. 132, and *Gartenlaub's Estate,* 198 Cal. 204, 244 P. 348, 350, also cited by appellant. The court then stated its conclusion, on page 384, thus:

"The normal view is that gains in value of investments belong to capital and are to be credited to the principal of the trust fund rather than to income. The gain represented by discount realized by payment on call or maturity of a bond naturally falls within this rule. The application of this principle is simple. It avoids many difficulties as to

accounting and as to payments of increment of expected but unrealized income of the life tenant. It is in accord with all the decisions of courts by which the subject has been considered. There is a possible appearance of inconsistency in allowing amortization of premium bonds to maintain capital and in denying allowance of discount on bonds for the benefit of the life tenant. We think that in this respect the decree was right. The practical advantages likely to flow from a simple rule, easy of comprehension and application, apparently based on experience and avoiding the possibility of impairment of the principal fund, overbalance the benefits of logical consistency."

Appellant further contends that all receipts which in fairness and justness constitute income rather than principal, should be credited to income and any doubts should be resolved in favor of the life beneficiary, who is presumed to be the primary object of the testator's bounty.

In *Mulcahy* v. *Johnson* (1927), 80 Colo. 499, 252 P. 816, cited by appellant, one of the questions presented is when do rents, profits, or income begin to run, as between life beneficiaries of a testamentary trust estate and the remaindermen? The court held agreeable with the general rule, unless otherwise provided in the will, they begin to run from the death of the testator. In its reasoning the court made this statement: "In all doubtful cases the interests of the life tenants are to be preferred to the interests of the remaindermen."

*Bradberry* v. *Anderson* (1941), 240 Ala. 681, 200 So. 762, cited by appellant, was a proceeding for the construction of a will. The question presented being whether under a clause providing, "After all indebtedness against my estate has been paid I desire the residue or balance of my estate to be held by the executor for the benefit and comfort of my wife, S. F. Anderson,

.both personal and real, so long as she lives," the executor can use only the income of the trust estate for the support of the widow, or may also use the *corpus* for that purpose. The court held:

> " 'Provisions for the support and maintenance of the beneficiary have been construed as entitling the beneficiary to use the principal of the fund where necessary, . . . and the power to consume the corpus has been held to be implied in the absence of express provision in the will,' not contrary to its intent."

However, these cases and others cited by appellant throw little light upon the question before us, because of the different factual setting.

Appellee, among other cases, cited In re: *Goldwater's Estate* (1940), 25 N. Y. S. (2d) 317, 175 Misc. 814. In that case the question presented was whether a premium paid on the redemption of certain bonds is to be credited to principal or income. The bonds were redeemed at 105 and accrued interest. The court held that the premium paid for the privilege of redemption properly belongs in capital account. See also *Gartenlaub's Estate, supra;* In re: *Account of Houston's Trustees, supra; Wood* v. *Davis* (1929), 168 Ga. 504, 148 S. E. 330.

In Indiana, the rule seems to agree with the general rule as expressed in other jurisdictions, that "unless otherwise expressed in or implied from the instrument itself, appreciation or losses in the value of the fund belong to the principal." And, "When securities are sold for an amount greater than the appraised or estimated value at the time of taking thereof the entire proceeds belong to the principal of the fund." *Robison* v. *Elston Bank & Trust Co.* (1943), 113 Ind. App. 633, 658, 659, 48 N. E. (2d) 181, 49

N. E. (2d) 348; *Powell* v. *Madison Safe Dep. & Tr. Co.* (1935), 208 Ind. 432, 196 N. E. 324. We think the cases noted present abundant authority for holding that in the absence of anything to the contrary in the will creating the trusts in question, the premiums paid for the redemption of the notes—notes which at the time constituted the entire *corpus* of the trust—were properly accredited to principal and not to income.

In his brief appellant states: "The testator, as the settlor of the trust, expressed no controlling intention with respect to apportionment of the premiums between corpus and income. His intention, so far as ascertainable from the trust provisions, is simply that all 'net income' shall be distributed to the beneficiary."

However, appellees properly call attention to the fact that clause (d) of Trust VI of the will (heretofore copied in full in this opinion) directs the same allocation of the premiums accruing on the redemption of the notes belonging to this trust as are found in the principles of law heretofore set forth. We think appellees are correct in this statement. The settlor's intention as expressed in the will is paramount, but the expressed intent in clause (d) does not change the situation in this case materially, since the law would have compelled the allocation of the premiums to the *corpus* of the trust if the testator had remained silent on the subject.

Appellant complains that her income became greatly reduced, causing her to consent to the changes in trust investments notes. First, the dividends from the Rock Wool Corporation stock were greatly reduced, and she joined in a petition to have the court approve a change in the corpus investment, exchanging the stock for $50,000 cash and $350,000 5% mortgage notes of the company, containing the redemp-

tion privilege, heretofore noted. She does not complain that the company has exercised its redemption privilege. She does not complain that the money received from the redemption of the notes has been reinvested in United States Government bonds—agreeable with decedent's will creating the trusts. She complains only that the premiums received thereon have been so invested, and her complaint is directed largely to the greatly reduced income received from the last investment. It is rather axiomatic in the stock and bond market that heavy income and heavy losses usually come from speculative investments. The settlor of these trusts seemed to be aware of this, and he wisely made the provisions noted —thereby sacrificing income for safety. This safety element at this time and under present economic conditions may be more beneficial to the remaindermen than to the life tenant, but it has elements beneficial to both. This court, of course cannot change the settlor's will, nor should it attempt to change the settled law to make a more equitable or more profitable present income for appellant, or a greater *corpus* for appellees.

Finding no error, the judgment of the lower court is affirmed.

NOTE.—Reported in 76 N. E. (2d) 673.