**In the Matter of the Trust Under the Last Will and Testament of Edwin NOBBE, Deceased, Petitioner,**

**Herman Nobbe, Susan Nobbe Munson and Marlene Nobbe Meyer, Appellants,**

v.

**Walter J. Nobbe, Delores E. Young, Robert A. Nobbe, Eugene O. Nobbe, Betty Nobbe and Leon W. Nobbe, Appellees (Respondents).**

No. 16A04–0411–CV–627.

Court of Appeals of Indiana.

July 28, 2005.

Rehearing Denied Oct. 6, 2005.

Alan S. Brown, Julia Blackwell Gelinas, Jennifer L. Vanlandingham, Locke Reynolds, LLP, Indianapolis, for Appellants.

Gregg S. Gordon, William J. Dale, Dale & Eke, P.C., Indianapolis, Thomas C. Bigley, Jason H. Guthrie, Sharpnack Bigley, LLP, Columbus, for Appellees.

## OPINION

FRIEDLANDER, Judge.

This case involves a dispute between nine siblings regarding the interpretation

of a testamentary trust (the Trust) created twenty-five years ago under the Last Will and Testament (the Will) of their father, Edwin Nobbe. The siblings' disagreement centers on the proper distribution of over three million dollars worth of stock in Fifth Third Bank, the primary asset in the Trust. Herman Nobbe, Susan Nobbe Munson, and Marlene Nobbe Meyer (referred to collectively as Appellants) appeal the trial court's grant of summary judgment in favor of their siblings Walter J. Nobbe, Delores E. Young, Robert A. Nobbe, Eugene O. Nobbe, Betty Nobbe, and Leon W. Nobbe (referred to collectively as Appellees). Appellants present the following consolidated and restated issue for review: Did the trial court improperly grant summary judgment in favor of Appellees rather than Appellants?

We reverse and remand.

Edwin Nobbe (Edwin) died testate [1] on March 12, 1982 and was survived by his wife, Loretta Nobbe (Loretta), and their nine children. In the event Loretta survived him, Edwin bequeathed to Loretta his personal property and a portion of his estate in an amount sufficient for Loretta to obtain the maximum marital deduction. The Will also provided several of Edwin's children with the opportunity to purchase certain farming operations at a reduced price, as more fully set forth below. Pursuant to the Will, the remainder of Edwin's estate was placed in the Trust, with Loretta as the lifetime income beneficiary. The Trustee, Decatur County Bank, was expressly authorized to invade the principal in the event that the income was not adequate for the proper maintenance and support of Loretta. Upon Loretta's death, the corpus of the Trust was to pass to Edwin's children as specifically set forth in the Will.

1. The Will was executed on June 24, 1980.

The Will provided in relevant part as follows:

## ITEM III.

During my lifetime my wife and I have aided certain of our children in establishing their own farming operations and have assisted some of them in purchasing property intending to eventually aid all of our children is such a manner.

\* \* \*

## ITEM IV.

In keeping with our plan to assist our children in acquiring their own farm real estate my wife and I have formed two separate corporations, being Loretta Farms, Inc. and Edwin & Loretta Nobbe, Inc., the assets of each corporation consisting solely of farm real estate.

I give my sons, Robert Nobbe and Eugene Nobbe, the absolute right to purchase all of my corporate stock in Loretta Farms, Inc. for a sum to be determined as follows:

\* \* \*

I also give my sons, Robert Nobbe and Eugene Nobbe, the absolute right to purchase all of the rest of the "Dyar Woods" farm owned by me at my death which may not have been deeded to the corporation for the sum of One Thousand ($1,000.00) Dollars per acre.

I give my daughters, Betty Nobbe and Delores Nobbe Young, the right to purchase all of my corporate stock in Edwin & Loretta Nobbe, Inc. for a sum to be determined as follows:

* * *

## ITEM VI.

I hereby give, devise and bequeath all the rest, residue and remainder of my estate of every nature, kind and description, and wheresoever situate, to the Decatur County Bank of Greensburg, Indiana, IN TRUST NEVERTHELESS, to hold in the same form in which it is received or to sell the same or any part thereof; to manage, invest and reinvest and to collect and receive all income arising therefrom, and after deducting all necessary expenses properly chargeable thereto, to pay unto my wife, Loretta C. Nobbe, the net income arising therefrom in convenient installments so long as she shall live and upon her death this trust shall terminate and said trustee shall transfer and pay the remaining trust funds to my children as follows:

*All of the stock I own in Decatur County Bank at the time of my death including stock dividends, if any, shall be divided between my children, Herman Nobbe, Susan Nobbe and Marlene Meyer, share and share alike. In the event this stock is sold during administration of my estate or of this trust then an equivalent value in cash shall be distributed to my three children mentioned above in lieu thereof.*

*The balance of said trust shall be distributed to all of my children including the three above-named, absolutely and in fee simple, share and share alike.*

* * *

## ITEM VII.

In the event my wife predeceases me, and after the provisions herein made for the purchase of my farm corporation stocks as set forth in Item IV, I give, bequeath and devise all the rest, residue and remainder of my estate as follows:

I give, bequeath and devise all of my stock in Decatur County Bank of Greensburg, Indiana, to my children, Marlene Meyer, Herman Nobbe and Susan Nobbe, share and share alike.

All of the rest and residue of my estate I give, bequeath and devise to all of my children including the three above-named, absolutely and in fee simple, share and share alike.

* * *

*Appendix* at 17–21 (emphasis supplied).

In December 1983, Edwin's estate distributed to the Trust five hundred shares of Decatur County Bank stock held by Edwin at the time of his death and worth $40,000. This asset was included in the Trust, along with nearly $270,000 of additional assets. During administration of the Trust, the banking laws in Indiana dramatically changed to allow regional bank holding companies. This change eventually resulted in Fifth Third Bank acquiring Decatur County Bank (or more accurately its successor, Decatur Bancshares, Inc.) in 1988. When Loretta died in 2003, Fifth Third Bank was the successor trustee of the Trust, which included 53,604 shares of Fifth Third Bank stock valued at $3,160,491.84.

On June 30, 2003, Fifth Third Bank, as Trustee, filed a Petition to Docket Trust and for Instruction and Direction from Court (the Trustee's Petition). The Trustee's Petition provided in part:

3. On December 8, 1983, upon the closing of the estate of Edwin Nobbe, Decatur County Bank received from said estate, among other assets, five hundred (500) shares of Decatur County Bank stock with a date of death value of Forty Thousand Dollars ($40,000). With the acquisition

of Decatur County Bank by Fifth Third Bank and the subsequent stock dividends, your petitioner now holds in the Edwin Nobbe Trust [53,604] shares of Fifth Third Bank stock, with a market value as of June 5, 2003, of [$3,160,491.84].

4. It is your Trustee's interpretation and the opinion of our trust legal counsel that pursuant to Item VI of [the Will], the 53,604 shares of Fifth Third Bank stock held in trust should be distributed to [Appellants], share and share alike.

5. In that your Trustee has been contacted by attorney William J. Dale, Jr. of Indianapolis, Indiana, representing Leon W. Nobbe, one of Edwin Nobbe's other children, questioning such interpretation, your Trustee seeks the Court's instruction and direction so that final distribution of the trust assets may be made and the trust closed.

*Id.* at 39–40.

Thereafter, on April 15, 2004, Appellees filed a Petition for Construction and Interpretation of Last Will and Testament and Petition to Deviate from Trust of Decedent (Appellees' Petition). In this petition, Appellees initially argued, "the clear and unambiguous language of the Will establishes that [Appellants] are to receive the equivalent value in cash of the Decatur County Bank stock, including dividends, that was owned by decedent at the time of his death." *Id.* at 15. Thus, according to Appellees, Appellants should each receive $13,333.33 (one-third of the stock's value at the time of Edwin's death) and "the balance of the stock of Fifth Third Bank upon sale [should] be distributed in equal shares to each of the nine Nobbe children." *Id.* at 14. In the alternative, Appellees asked the trial court to direct a deviation from the Trust because "the distribution of the trust proposed by the Trustee would defeat or substantially impair the accomplishment of the purposes of the trust", that is Edwin's intent to treat his nine children "equally or substantially equally". *Id.* at 15.

Both Appellants and Appellees moved for summary judgment in July 2004. The trial court held a hearing on the respective motions for summary judgment on September 14, 2004. Thereafter, on October 26, 2004, the trial court granted summary judgment in favor of Appellees and denied Appellants' motion for summary judgment. The trial court ordered the trustee to distribute the shares of Fifth Third Bank stock as follows: "[Appellants] shall receive the sum of $40,000 share and share alike which represents the value of the stock at the time of Edwin Nobbe's death, the remaining shares shall be distributed to all of the Nobbe children, [Appellees and Appellants], share and share alike." *Id.* at 9. Appellants appeal from this order.

We review a ruling on a motion for summary judgment using the same standard employed by the trial court. Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Corr v. Am. Family Ins.*, 767 N.E.2d 535 (Ind.2002). A grant of summary judgment is presumed to be valid and the appellant bears the burden of proving the trial court erred in determining there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Yoquelet v. Marshall County*, 811 N.E.2d 826 (Ind.Ct.App.2004).

We initially turn to the language of the Will. Appellants claim the Will clearly and unambiguously created a specific bequest of stock to them and, therefore, they

are entitled to receive all of the growth in the stock during the administration of the Trust. Appellees, on the other hand, argue the unambiguous language of the Will establishes that Appellants are entitled only to a cash amount equivalent to the value of the Decatur Bank Stock at the time of Edwin's death.

When a court examines a will, the primary purpose is to determine and carry out the intent of the testator. *In re Estate of Cashen,* 715 N.E.2d 922 (Ind.Ct. App.1999).

> The interpretation, construction and legal effect of a will is a question to be determined by the court as a matter of law. Words contained in a will are to be understood to have been used by the testator in their common and ordinary sense and meaning. If the language in a will is unambiguous and clearly expresses the testator's intent, the express language of the will must govern.

*Id.* at 924 (citations omitted). In other words, resort may be had to rules of construction only for the purpose of ascertainment of a testator's intent when there is an actual or latent ambiguity. *Merrill v. Wimmer,* 481 N.E.2d 1294 (Ind.1985). " '[T]he plain and unambiguous words of the will must prevail, and are not to be controlled, or qualified, by any conjectural, or doubtful construction growing out of the situation, circumstances, or condition, either of the testator, his property or his family.' " *Id.* at 1298 (quoting *Gibson v. Seymour,* 102 Ind. 485, 489–90, 2 N.E. 305, 307 (1885)).

As set forth above, the Will provides that upon Loretta's death, the Trust shall terminate and the trust funds shall be distributed as follows:

> All of the stock I own in Decatur County Bank at the time of my death including stock dividends, if any, shall be divided between my children, Herman Nobbe, Susan Nobbe and Marlene Meyer, share and share alike. In the event this stock is sold during administration of my estate or of this trust then an equivalent value in cash shall be distributed to my three children mentioned above in lieu thereof.

> The balance of said trust shall be distributed to all of my children including the three above-named, absolutely and in fee simple, share and share alike.

*Appendix* at 20.

The Will clearly establishes a specific bequest of stock to Appellants. *See In re Estate of Warman,* 682 N.E.2d 557, 560 (Ind.Ct.App.1997) ("[a] specific bequest is defined as a bequest of some definite or specific part of the testator's estate which is capable of being designated, identified, and distinguished from other like things composing the testator's estate"), *trans. denied; In re Will of Scheele,* 517 N.E.2d 418, 425 (Ind.Ct.App.1987) ("bequest of stock in a specified corporation has been held to be a specific legacy"), *trans. denied.* Appellees do not appear to dispute this. They argue, however, that the phrase "at the time of my death" indicates Edwin's intent to "specifically preserve for *all* of his children the benefit of any growth in this stock through postdeath stock dividends or stock splits". *Appellees' Brief* at 9. We believe this to be an unreasonable interpretation of the Will. The language is best understood as particularly identifying the trust property constituting the specific devise, without limiting the beneficiaries' entitlement to accretion of the stock. For obvious reasons, this language was not included in the portion of the Will addressing distribution of Edwin's estate in the event Lor-

etta predeceased him.[2] We note, however, that had Edwin's wife predeceased him, the Decatur County Bank stock would have been distributed directly to Appellants and they alone would have enjoyed the stock's significant accretion into the future.[3]

Appellees also direct us to the provision regarding what should happen if the Trustee sold the stock during administration of the Trust, a right specifically granted to the Trustee in the Will. In this event, the Trustee was directed to distribute to Appellants an equivalent value in cash in lieu of the stock. Appellees contend this provision was intended to limit the interest Appellants were entitled to receive, in the event of a sale, to the value of the stock at the date of Edwin's death. Thus, according to Appellees, Appellants would not be entitled to the proceeds or any accretion of the stock. Once again, we cannot agree. Appellees acknowledge that unless otherwise expressed in or implied from the testamentary instrument itself, appreciation or loss in the value of stock belong to the principal. *See Luery v. Addington,* 225 Ind. 581, 591, 76 N.E.2d 673, 678 (1948) ("[w]hen securities are sold for an amount greater than the appraised or estimated value at the time of taking thereof the entire proceeds belong to the principal of the fund"). Contrary to Appellees' assertions on appeal, nothing in the Will expressly or impliedly indicates an intent to stray from this general rule. Nowhere in the Will does Edwin express an intent to transfer any portion of the stock to Appellees or to limit the value transferred to

Appellants to the stock's value at the date of his death. Therefore, we conclude that under the plain language of the Will, Appellants are entitled to any accretion in the stock at the point of sale or, if the stock was not sold, at the time of the Trust's termination.

In the alternative, Appellees argued below and now argue on appeal that the doctrine of equitable deviation should apply in this instance. In particular, they claim Edwin intended to treat all of his children substantially equally [4] and, prior to his death, Edwin could not foresee the "sweeping changes in Indiana banking law...which directly impaired Edwin's estate plan." *Appellees' Brief* at 19.

Appellants contend that the doctrine of equitable deviation is inapplicable here and direct us to *In re Scheele,* 517 N.E.2d 418. In that case, we held that the trial court properly refused to apply the doctrine of equitable deviation, explaining:

> The doctrine of equitable deviation, as codified by statute, permits deviation from the administrative terms of the trust where circumstances unknown or unforeseen by the testator have occurred. IND. CODE 30–4–3–26; *Sendak v. Trustees of Purdue University* (1972), 151 Ind.App. 372, 378, 279 N.E.2d 840, 844. This doctrine cannot be applied to this case for two reasons. First Kellogg does not request deviation from administrative terms of the trust, but deviation from the method of distribution set forth by Edwin Scheele. Sec-

2. As observed by Appellees, in the event Loretta predeceased Edwin, the time of distribution would have naturally limited the bequest to only the stock and stock dividends, if any, that Edwin owned at the time of his death.

3. Thus, to accept Appellees' argument regarding their father's intent, we would have to find that Edwin intended two very different

outcomes based on the order in which he and his wife died.

4. Appellants point to the Will as evidence that Edwin intended to treat his children individually, not equally, as he and his wife had already provided for some of their children during Edwin's lifetime.

ond, the sale of stock not only was foreseen by Edwin Scheele but authorized by him under Paragraph 9(1)(c) of his will.

*In re Scheele,* 517 N.E.2d at 426. Thus, Appellants assert that equitable deviation is only appropriate with regard to administrative terms of a trust.

The current statutory codification of the equitable deviation doctrine, Ind.Code Ann. § 30–4–3–26 (West 1994), provides in relevant part:

(a) Upon petition by the trustee or a beneficiary, the court shall direct or permit the trustee to deviate from a term of the trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. In that case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust, or may prohibit the trustee from performing acts required by the terms of the trust.

Despite the holding in *Scheele,* the statute does not expressly limit the doctrine to deviation from administrative terms.

Appellees argue that *Scheele* was wrongly decided and is contrary to contemporary scholarly thinking. In particular, Appellees direct us to § 66(1) of the Restatement (Third) of Trusts (2003) (allowing modification or deviation from an administrative or distributive provision of a trust if, because of circumstances not anticipated by the settlor, modification or deviation will further the purposes of the trust) and § 412(a) of the Uniform Trust Code drafted in 2003 by the National Conference of Commissioners on Uniform State Laws (allowing modification of the administrative or dispositive terms of a trust or termination of the trust if, because of circum-

stances not anticipated by the settlor, modification or termination will further the purposes of the trust). Further, our legislature recently codified the language of § 412(a) of the Uniform Trust Code. Effective July 1, 2005, I.C. § 30–4–3–24.4(a) will provide as follows: "The court may modify the administrative or dispositive terms of a trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention."

We need not determine whether *Scheele* was wrongly decided or whether the doctrine of equitable deviation should apply to dispositive, as well as administrative, terms of a trust. In either case, it is necessary that circumstances not anticipated by the settlor exist before the extraordinary relief of equitable deviation may be granted. Appellees claim that the unanticipated circumstance in this case is the change Indiana banking laws underwent in the mid–1980s. Prior to execution of the Will, however, Edwin was aware of the proposed changes in banking laws. In a letter dated December 10, 1979, the president of Decatur County Bank wrote shareholders, including Edwin, and stated in part:

*I am sure you are all aware that a change in Indiana Banking Structure Law is proposed and the push is on.* Your Board has taken a strong stand opposing the change in laws regarding cross-county line branching and statewide multi-bank holding companies. If this passes and local banks are taken over by the larger banks, local control will be lost. There will be a concentration of power and control of bank deposits which I feel will not be in the best interest of local citizens. We are also sure local citizens will lose the respon-

siveness that local banks have with the community needs. If you have any questions concerning this matter, please come in and we'll talk about it. I urge all of you to contact your State Senator and Representative and make your wishes known.

*Appendix* at 117 (emphasis supplied). Thus, Edwin was aware of the possibility of change in the banking laws at the time he executed his will.

Moreover, this is not the type of unanticipated economic change that the Restatement and Uniform Trust Code appear to envision as calling for application of the doctrine of equitable deviation. Rather, their comments and illustrations involve truly unforeseen events resulting in economic hardship, the incapacity of a beneficiary, the impossibility or imprudence of a trust provision, or the diminution in value of a trust asset. Appellees direct us to no comments, illustrations, or cases that provide for a distributive deviation due to an increase in value of a trust asset and we see no reason to expand application of the doctrine in this regard.[5]

As a matter of law, Appellants are entitled to the stock, including any accretion since Edwin's death. This was clearly Edwin's intent when he executed the Will and deviation is not appropriate simply because the stock has significantly increased in value over the last twenty or so years. When one makes a specific bequest of stock or other property, such as real property, the probability is that its value will change over time.[6] We will not, over twenty years later, step in and redistribute Edwin's estate in an attempt to equalize the devises at this point in time. Had Edwin intended the devises to be equal upon distribution of the trust asset at some unknown point in the future, he could have easily accomplished this by eliminating the specific bequests of farm assets and stock and by providing for equal division of the trust assets among all his children upon termination of the Trust. The trial court improperly granted summary judgment in favor of Appellees.

Finally, we turn to Appellants' entitlement to summary judgment. Appellees claim that the designated evidence fails to establish as a matter of law that the Fifth Third Bank stock now held by the Trust is the natural growth and accretion of the original five hundred shares of Decatur County Bank stock.[7]

It is undisputed that the Trust no longer holds shares of Decatur County Bank stock. It is also undisputed that Decatur County Bank no longer exists and Fifth Third Bank became the corporate succes-

---

**5.** In a comment, the Restatement warns courts to "act with particular caution in considering a modification or deviation that can be expected to diminish the interest(s) of one or more of the beneficiaries in favor of one or more others." Restatement (Third) of Trusts § 66 cmt. (b) on subsection (2).

**6.** Several of the Appellees were given access to farm assets, and the livelihood that could be derived from those assets, years before Appellants could receive anything under the Will or the Trust. We dare to say that the value of this farm real estate has likely increased in the more than twenty years since Edwin's death.

**7.** We summarily reject Appellees' argument that the acquisition by Fifth Third Bank necessarily resulted in a "sale" of the Decatur County Bank stock held in the Trust, requiring distribution to Appellees of an equivalent value in cash in lieu of the stock. A plain reading of the Will reveals that the alternative distribution was meant to apply if the Trustee took affirmative action and sold the stock during administration of the Trust. A natural and passive change in form of the stock due to a subsequent corporate merger does not affect a sale as intended under the Will.

sor of the local bank during administration of the Trust, which resulted in the bank stock being transferred and exchanged for Fifth Third Bank stock. In Appellees' Petition, they further acknowledged that "by reason of splits, there now exist 53,604 shares of Fifth Third Bank at the date of this petition." *Appendix* at 13.

The connection between the original stock and the Fifth Third Bank stock now held in the Trust is obvious. Aside from evidence that the Trustee purchased additional shares with other trust assets during administration of the Trust, the only reasonable inference from the undisputed evidence is that the current shares in Fifth Third Bank originated from the initial five hundred shares in Decatur County Bank. Appellees designated no evidence to the contrary that would create an issue of material fact. Therefore, we conclude that Appellants are entitled to summary judgment. Upon remand, the trial court shall grant summary judgment accordingly and direct the Trustee to distribute the Fifth Third Bank stock equally among Appellants.

Judgment reversed and remanded.

MATHIAS, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissents with opinion.

I respectfully dissent. I do not disagree with the majority's premise that the Will establishes a specific bequest of stock to the Appellants and that unless otherwise expressed in or implied from the Will, appreciation or loss in the value of stock belong to the principal. *See* op. at 840, 841. However, I do disagree that "under the plain language of the Will, Appellants are entitled to any accretion in the stock at the point of sale or, if the stock was not sold, at the time of the Trust's termination." *Id.* at 841.

I do not believe that "equivalent value in cash" means the value of the stock at the time the distribution of the trust corpus is made. It appears that Edwin believed the trust could last for a considerable length of time, as his surviving wife was the lifetime income beneficiary of the trust. Any number of things could have happened to the stock during the administration of the trust. The stock could have decreased in value, the stock could have been sold and some of the proceeds used for the maintenance and support of Loretta, or, as did in fact happen, the stock could have increased in value. If the stock had been sold during the administration of the trust, the Appellants would not necessarily have received the cash immediately. When the trust was distributed, would they receive only the value of the stock when it was sold or would they also be entitled to receive the interest on the proceeds that remained in the trust? What about any portion of the proceeds that had been used for Loretta's maintenance and support? If the stock had become worthless, would the Appellants be entitled to nothing from the estate when the trust was distributed? If "equivalent value in cash" means anything other than value of the stock at the time of Edwin's death, the vagaries of time and value make the meaning too uncertain. I would therefore hold that the trial court properly granted summary judgment to the Appellees and affirm the trial court.