In the Matter of the STEPHEN L. CHAPMAN IRREVOCABLE TRUST AGREEMENT Dated December 18, 1997:

Carrie Chapman, Appellant–Intervenor,

v.

Howard L. Chapman and Elizabeth W. Chapman, Trustees of the Stephen L. Chapman Irrevocable Trust Agreement Dated December 18, 1997, Appellees–Petitioners.

No. 02A03–1012–TR–624.

Court of Appeals of Indiana.

Aug. 24, 2011.

David E. Bailey, Eilbacher Fletcher LLP, Fort Wayne, IN, Attorney for Appellant.

Cathleen M. Shrader, Thomas A. Herr, Barrett & McNagny, LLP, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

Howard L. ("Howard") and Elizabeth W. ("Elizabeth") Chapman (collectively, "Trustees"), parents of Stephen L. Chapman ("Stephen") and settlors of the Stephen L. Chapman Irrevocable Trust Agreement ("the Trust") filed a petition to modify the date of distribution of Trust assets to Stephen, and the trial court granted the petition. Intervenor Carrie Chapman ("Carrie"), wife of Stephen, appeals the trial court's decision, raising the following two restated issues:

I. Whether the trial court possessed jurisdiction to modify the Trust even though there was a previously-filed dissolution proceeding between Carrie and Stephen pending in another Allen County Superior Court; and

II. Whether the trial court erred when it granted Trustees' petition to reform the Trust.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY[1]

Howard and Elizabeth, husband and wife, created the Trust on December 18, 1997. The Trust provided that a distribution of trust assets was to be made to Stephen, their son, upon his fifty-fifth birthday, which was November 13, 2010. Initially, the assets of the Trust consisted of stock in Waterfield Mortgage, a company that Elizabeth's father founded in the 1920s or 1930s, and at some point Elizabeth inherited the stock from her parents. In 2006 or 2007, Waterfield Mortgage Company was sold, and the stock was replaced with cash or other assets. *Appellant's App.* at 82.

At the time the Trust was created, Stephen and Carrie were engaged, and they married about a month later, on January 22, 1998. On June 29, 2009, Carrie filed a petition for dissolution of her marriage to Stephen in the Whitley Circuit Court, which was thereafter removed to Allen County Superior Court No. 7 ("dissolution court"), where it is still pending.[2]

On May 13, 2010, Trustees filed a verified petition to reform the Trust in Allen County Superior Court No. 1 ("trial court"), seeking to delay distribution of assets to Stephen. Trustees argued for reformation based on provisions in the Trust and also pursuant to Indiana Code

---

1. We held oral argument in this case on July 12, 2011 in the Allen County Courthouse before an audience of Allen County Bar Association members. We commend counsel on their written advocacy and oral presentations. We also thank the courthouse personnel for their hospitality in hosting this oral argument. Finally, we thank the Allen County Bar Association members for their thoughtful post-argument questions concerning Indiana's appellate system.

2. Carrie and Stephen are the parents of three minor children.

sections 30–4–3–24.4 and 30–4–3–26, which provide standards for modification of administrative or dispositive terms of a trust. Carrie filed a motion to intervene under Indiana Trial Rule 24, arguing that she had a substantial interest in the modification of the Trust. More specifically, she argued that Stephen's interest in the Trust constituted a marital asset and that a distribution of the Trust to Stephen while the divorce was pending should be considered an economic circumstance affecting the division of the marital estate. The trial court held a hearing on Carrie's motion and, on July 14, 2010, granted her request to intervene in the Trust proceedings.[3] *Appellant's App.* at 33. Thereafter, Carrie filed a motion to stay the Trust reformation proceedings, arguing that the dissolution court possessed jurisdiction of the matter. The trial court denied her motion. Carrie also filed a motion for joinder in the dissolution action, seeking, among other things, to have the trust proceedings joined with the dissolution matter; the dissolution court denied her motion.

On September 29, 2010, the trial court held a hearing on Trustees' verified petition to reform the Trust. At the hearing, Howard testified that the purpose of the Trust was to pass the property that had been inherited by Elizabeth "and accumulated for generations" to Stephen. *Tr.* at 15 (Sept. 29, 2010 hearing). He explained, "The only way ... that [Carrie] could ever become a beneficiary would be if Steve had died during the term of the trust and there were [sic] no divorce pending." *Id.* at 19. Carrie's testimony included her statement that she was making a claim in the dissolution action that the Trust should be considered as a marital asset. Stephen testified that he had conversations with Carrie prior to their marriage about a pre-marital agreement, but one was never prepared or

signed. Referring to the dissolution proceedings, Stephen opined that "it seems" Carrie and her attorney were purposely delaying the resolution of the dissolution that was filed in June 2009. *Id.* at 51. Stephen's testimony neither objected to nor overtly advocated for the reformation of the Trust.

After taking the matter under advisement, and receiving post-trial briefs from the parties, the trial court issued an order on November 12, 2010 granting Trustees' petition to reform the trust. That same date, it issued a separate order including findings, discussion, and decision, explaining its reasoning. In making its decision, the trial court relied on Article II, Clause 7 of the Trust, which provides for the reformation of the Trust and states:

> The Settlors recognize that one or both of the following unforeseeable conditions may arise in the future:
>
> (a) Legislation or court decisions highly detrimental to any trust created hereunder or to any beneficiaries; or
>
> (b) Other events tending to greatly impair the intent and purposes of this Irrevocable Trust Agreement.
>
> Should either of these conditions occur, reformation or termination of the Trust created hereunder might be desirable. The Trustee, in the sole judgment and discretion of the Trustee, may petition the court of competent jurisdiction for a determination that a condition coming within either of the foregoing standards has occurred, and that the best interest of the Trust and other beneficiaries require reformation or termination of the Trust. If such court shall order that such a condition has occurred and that the best interest of the Trust and of the beneficiaries require reformation or ter-

---

**3.** Trustees do not challenge the trial court's order allowing Carrie to intervene.

mination of the Trust, the Trustee shall act in accordance with such order.

*Appellant's App.* at 200. The trial court found that "[t]he intent of the Chapmans as the Settlors of the trust was to pass the assets received by Elizabeth Chapman from her parents on to her son, his family and his issue." *Id.* at 201. The trial court determined that "the pending dissolution . . . is an event tending to greatly impair the intent and purposes of the [Trust] and that it is in the best interest of the [T]rust and the Beneficiary that [the Trust provisions] be reformed." *Id.* The trial court ultimately ordered:

> [T]he Trust shall be modified so that any interest of Stephen L. Chapman in the Trust shall not vest prior to six months after the entry of the final dissolution decree dissolving the marriage of Carrie A. Chapman and Stephen L. Chapman and disposing of the marital property, and the completion of any appeal therefrom, if an appeal is timely taken.

*Id.* at 194. Thus, the terms of the Trust were modified[4] such that the distribution to Stephen of the Trust assets would occur six months after the final order of dissolution or certification of any appeal. Carrie now appeals.

## DISCUSSION AND DECISION

### I. Jurisdiction

■ Carrie asserts that the trial court erred when it exercised jurisdiction over the Trust reformation proceedings. The

vehicle by which Carrie raised the jurisdictional issue to the trial court was her motion to stay, where she argued that by reforming the Trust, Trustees "are attempting to control the distribution of marital property which they contend does not include the Trust corpus and the [T]rustees are effectively attempting to assert a right to control how the dissolution court divides the marital property."[5] *Appellant's App.* at 41. We review a trial court's denial of a motion to stay under an abuse of discretion standard. *See Hilliard v. Jacobs,* 927 N.E.2d 393, 403 (Ind.Ct. App.2010), *trans. denied.* However, Carrie urges that because the essence of her motion to stay was jurisdictional, we should apply a *de novo* review to the trial court's denial of her motion. *Beatty v. Liberty Mut. Ins. Grp.,* 893 N.E.2d 1079, 1084 (Ind.Ct.App.2008) (appellate review of trial court's dismissal of plaintiff's complaint under Indiana Trial Rule 12(B)(8) is *de novo*). Under either review standard, we find no trial court error.

Carrie's motion to stay argued that the dissolution court properly possessed jurisdiction of the matter because Stephen was already a party to the previously-filed dissolution action, and the petition to reform the Trust was filed specifically to affect the assets to be considered in the dissolution action. However, jurisdictional conflicts are properly placed before a court by way of an Indiana Trial Rule 12(B)(8) motion to dismiss on the ground that the same action is pending in another court, and that the defense is waived if not brought within

---

4. The trial court's Findings primarily use the terms modify or modification, not reform or reformation, as do the parties in their appellate briefs. According to authorities, "The basis of a reformation is that the instrument is the product of a mistake." However, where there was no mistake, the remedy is not reformation, but is to modify the trust's terms. *See Appellant's App.* at 88–89 (Trustees' Post Trial Brief citing to George Gleason Bogert et al., Bogert's Trusts & Trustees § 991–92 *Reformation of Trust Instrument* (3d ed.2006)).

5. In her motion to stay, Carrie remarked that she was not seeking dismissal under Indiana Trial Rule 12(B)(8), which contemplates dismissal because of a prior pending action in another state court. *Appellant's App.* at 49.

twenty days after service of the prior pleading. Here, Carrie filed a motion to stay, not a Trial Rule 12(B)(8) motion to dismiss and, in fact, expressly noted in her motion that she was not seeking relief under Trial Rule 12(B)(8). Trustees assert, and we agree, that Carrie waived the jurisdictional issue by not properly objecting to it below.

■ Waiver notwithstanding, Carrie has not established that the trial court could not or should not have exercised jurisdiction. In order for a trial court to dismiss a matter because another proceeding is pending, the courts must look to whether the actions are the same or substantially the same in the following three aspects: (1) the parties; (2) the subject matter of the cases; and (3) the remedies sought. *Meade v. Marshall Superior Court*, 644 N.E.2d 87, 89 (Ind.1994).

Here, regarding similarity of parties, Trustees are not parties to the dissolution action. As for the subject matter, Trustees explain that in determining whether the subject matter of two lawsuits is substantially the same, the relevant inquiry is not whether parts of one lawsuit are the same or similar to parts of the other; rather, each lawsuit as a whole should be examined. *Appellees' Br.* at 18 (citing *Kentner v. Ind. Pub. Emp'rs' Plan, Inc.*, 852 N.E.2d 565, 572 (Ind.Ct.App.2006), *trans. denied* (2007)). In this case, as the trial court properly recognized, the subject matter of the two proceedings is not the same or substantially the same; the dissolution involves matters relating to custody, child support, and property division, while the Trust reformation proceedings involve the construction of the Trust, the Trust Code, and the rights and duties of the Trustees. Accordingly, the trial court concluded that it possessed jurisdiction over the Trust reformation proceedings. The dissolution court concluded likewise, find-

ing that the trial court possessed "exclusive jurisdiction over the [Trust] issues," including "whether or not the Trust can be reformed under its provisions, the law, or any applicable statute." *Appellant's App.* at 135 (dissolution court's order denying Carrie's motion for joinder seeking to join Trust proceedings with dissolution proceedings).

We find no error, and we affirm the trial court's decision with regard to its exercise of jurisdiction over the Trust proceedings.

## II. Modification of the Trust

### A. Standard of Review

According to the record before us, neither side requested specific findings from the trial court, but the trial court *sua sponte* entered findings of fact. *See Appellant's Br.* at 7–8; *Appellees' Br.* at 12. The parties appear to agree that the following is the applicable standard of review:

When a trial court enters special findings and conclusions *sua sponte*, the specific findings and conclusions control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. On appeal, we review the trial court's specific findings and conclusions under a two-tiered standard of review. We first consider whether the evidence supports the findings, and next whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. We review conclusions of law *de novo*. However,

we may affirm a general judgment on any theory supported by the evidence adduced at trial.

*Tew v. Tew,* 924 N.E.2d 1262, 1264 (Ind.Ct. App.2010), *trans. denied* (internal citations omitted).

### B. Unforeseeability Requirement

Trustees' petition to reform the Trust presented issues requiring the trial court to interpret the Trust, particularly Clause 7, and thus presented a question of law for the trial court. *Paloutzian v. Taggart,* 931 N.E.2d 921, 925 (Ind.Ct.App. 2010). An appellate court is not at liberty to rewrite a trust agreement any more than it is at liberty to rewrite contracts. *Id.* When a trust instrument must be construed by a court, we attempt to discern the settlor's intent in light of the facts and circumstances at the time the instrument was executed. *Id.*

The trial court's decision to delay distribution of assets relied primarily upon the language of Clause 7, which states:

> The Settlors recognize that one or both of the following *unforeseeable* conditions may arise in the future:
>
> (a) Legislation or court decisions highly detrimental to any trust created hereunder or to any beneficiary; or
>
> (b) Other events tending to greatly impair the intent and purposes of the Irrevocable Trust Agreement.
>
> Should either of these conditions occur, reformation or termination of the trust created hereunder might be desirable. The Trustee, in the sole judgment and discretion of the Trustee, may petition the court of competent jurisdiction for a determination that a condition coming within either of the foregoing standards has occurred, and that the best interests of the trust and of the beneficiaries re-

quire reformation or termination of the trust.

*Appellant's App.* at 18–19 (emphasis added).

Pursuant to the terms of Clause 7, the trial court determined that:

> [T]he pending dissolution of the marriage of the Beneficiary, Stephen L. Chapman, and the Intervenor, Carrie Chapman, is an event tending to greatly impair the intent and purposes of the [Trust].
>
> The Court further concludes that it is in the best interest of the trust and the Beneficiary that Article II, Clause 1 of the [Trust] be reformed (or modified).

*Id.* at 202. The trial court then reformed or modified the Trust's terms so that distribution to Stephen was delayed until at least six months after the final dissolution decree and the completion of any appeal therefrom.

Of particular importance in this appeal is the fact that Clause 7 specifically includes the term "unforeseeable" when describing those conditions under which Trustees may petition a trial court for reformation of the Trust. Here, the trial court determined that Trustees were not required to prove that dissolution of Carrie and Stephen's marriage was unforeseeable because, by definition, any event described in subsections (a) or (b) was *per se* unforeseeable. The trial court explained:

> The Court is aware that the Intervenor contends that the Court must also determine if the event was unforeseeable and that it was always foreseeable that the relationship of [Stephen and Carrie] could fail and the marriage dissolve. However, the Court believes that the language of [Clause 7], to wit: "The Settlors recognize that one or both of the following unforeseeable conditions may arise in the future," should be construed to mean that the occurrence of

condition (a) or condition (b) is per se unforeseeable and thus the occurrence of condition (a) or condition (b) gives rise to the reformation or termination of the [T]rust pursuant to this clause. Therefore the Court needs only to determine if condition (b) has occurred.

*Id.* at 200 n. 2. On appeal, Carrie asserts that the trial court's interpretation effectively reads out the term "unforeseeable" from Clause 7, contrary to the Trust's own terms, and furthermore is inconsistent with Indiana's Trust Code. We agree.

■■■ Clause 7 of the Trust does not state that the Trustees may seek reformation due to any event tending to impair the intent and purposes of the Trust; rather, it says that the Trustees may petition a court for reformation because of any *unforeseeable* event tending to impair the intent and purposes of the Trust. It is contrary to basic contract interpretation to fail to give plain meaning to an unambiguous contract term that exists in the document. *Univ. of S. Ind. Found. v. Baker,* 843 N.E.2d 528, 532 (Ind.2006) (where trust is capable of clear and unambiguous construction, court must give effect to trust's clear meaning). We therefore conclude the trial court erred when it determined that Trustees were not required to establish that the dissolution was unforeseeable. Our holding in that regard is supported by the fact that the term "unforeseeable," and like terms, have a history that can be traced back not only to Indiana's Trust Code, but its predecessors in common law.

■■ The common law approach for allowing modification for unanticipated circumstances is sometimes referred to as "the equitable deviation doctrine," which states: if circumstances unanticipated by the settlor occur, the court may modify the administrative terms of the trust, but only to prevent the unanticipated circumstances

from defeating or substantially impairing the accomplishment of the purposes of the trust. Alan Newman, *The Intention of the Settlor Under the Uniform Trust Code: Whose Property Is It, Anyway?* 38 Akron L.Rev. 649, 663 (2005). Indiana's statutory codification of the equitable deviation doctrine is Indiana Code section 30–4–3–26, which also follows the language of Restatement (Second) of Trusts § 167 (1959). Indiana Code section 30–4–3–26 ("Section 26"), provides in pertinent part:

> Upon petition by the trustee or a beneficiary, the court shall direct or permit the trustee to deviate from a term of the trust *if, owing to circumstances not known to the settlor and not anticipated by him,* compliance would defeat or substantially impair the accomplishment of the purposes of the trust. In that case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust, or may prohibit the trustee from performing acts required by the terms of the trust.

Ind.Code § 30–4–3–26(a) (emphasis added). Indiana Code section 30–4–3–24.4 ("Section 24.4") is similar to Section 26 and reads in pertinent part:

> The court may modify the administrative or dispositive terms of a trust *if because of circumstances not anticipated by the settlor,* modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.

Ind.Code § 30–4–3–24.4(a) (emphasis added).

Section 24.4 is patterned after Section 412(a) of the Uniform Trust Code ("UTC") which, in turn, is taken from the Restate-

ment (Third) of Trusts § 66(1). *See* George Gleason Bogert, Trusts & Trustees § 994 *Power of Court to Modify Trust* at 182 n. 1 (3d ed.2006). Whereas Section 24.4 requires that modification will "further the purpose of the trust," Section 26(a) requires that the change be necessary to carry out the purpose of the trust because compliance would defeat or substantially impair the accomplishment of the purpose of the trust. Both Sections 24.4 and 26 concern circumstances that are not anticipated by the settlor.

This court in *In re Nobbe,* 831 N.E.2d 835 (Ind.Ct.App.2005), examined whether growth in the value of bank stock, placed in trust by a father for his children, constituted "unanticipated circumstances" to justify equitable deviation from the trust's specified terms concerning the distribution of stock. *Id.* at 841–42. The case involved a dispute between nine siblings regarding the interpretation of a testamentary trust created twenty-five years earlier under their father's will. At the time of the father's death, the stock was valued at $40,000, but during the administration of the trust the banking laws in Indiana "dramatically changed" which resulted in Fifth Third acquiring the bank's holding company, and the trust's stock value increased to over three million dollars. *Id.* at 838. Their disagreement centered on the proper distribution of over three million dollars worth of stock in Fifth Third Bank. Some of the children claimed that their father intended to treat all of his children substantially equally and, prior to his death, he could not foresee the "sweeping changes in Indiana banking law ... which directly impaired [his] estate plan." *Id.* at 841. The trial court refused to apply the equitable deviation doctrine, finding that the father was aware of possible banking law changes. In affirming the trial court, this court included some perhaps insightful language about unforeseen circumstances:

Moreover, this is not the type of unanticipated economic change that the Restatement and Uniform Trust Code appear to envision as calling for application of the doctrine of equitable deviation. Rather, their comments and illustrations involve *truly unforeseen events* resulting in economic hardship, the incapacity of a beneficiary, the impossibility or imprudence of a trust provision, or the diminution in value of a trust asset. Appellees direct us to no comments, illustrations, or cases that provide for a distributive deviation due to an increase in value of a trust asset and we see no reason to expand application of the doctrine in this regard.

*Id.* at 843 (emphasis added).

Other authorities seem to follow the "truly unforeseen" approach. Indiana Law Encyclopedia states:

The types of unanticipated changes that warrant application of the doctrine of equitable deviation include *truly unforeseen events* resulting in economic hardship, the incapacity of a beneficiary, the impossibility or imprudence of a trust provision, or the diminution in value of a trust asset.

Michele Meyer McCarthy, J.D. & Eric C. Surette, J.D., *Deviation from, or Modification of Terms of Trust,* 28 Indiana Law Encyclopedia Trusts § 120 (updated Apr. 2011) (emphasis added). Eric A. Manterfield, in his article "The Revocable Irrevocable Trust: Part II," cites to Sections 24.4 and 26 and asks, "What are the 'circumstances' which might lend a court to utilize this statutory power to modify or terminate a trust?" *See* 30 Res Gestae 498–99 (1986). He opines:

[T]he subsequent divorce of the settlor and his spouse or the attainment of distribution ages by the settlor's children during his lifetime are probably not the

sort of change of 'circumstances' contemplated by this statute.

*Id.*

Here, the trial court interpreted the Trust and found that the dissolution filed by Carrie was a *per se* unforeseen circumstance that impaired the intent and purposes of the Trust and warranted modification by the trial court to delay distribution of assets to Stephen until the dissolution and any appeal of it is final. We find this is not in line with the Trust's own terms, Sections 24.4 and 26 of the Indiana Trust Code, and the history behind those provisions. We therefore hold that the trial court erred when it concluded that Trustees were not required to establish that the dissolution was an "unforeseeable" event.

■ Carrie asserts that the evidence does not support a finding that unforeseeable events occurred here, because, in this day and age when "divorce is a well-known fact of daily life," it is foreseeable that any marriage might end in dissolution. *Appellant's* Br. at 16. Carrie further asserts that the Trust itself establishes that it was foreseeable that a dissolution could occur because Article II, Clause 5 addresses the subject of a possible dissolution. It provides that Carrie would be a contingent beneficiary under certain circumstances. Specifically, if Stephen died prior to distribution at age 55, then upon the death of the last to survive of the Settlors, Stephen, and his issue, the Trustee shall distribute one-third of the then-remaining Trust property to Carrie if she was living and married to Stephen at the time of his death; however, her interest would lapse if "a petition for the dissolution of such marriage ... was pending" at the time of his death. *Appellant's App.* at 16. Carrie argues that, considering this specific term in the Trust, "the Settlors foresaw the possibility that a dissolution of marriage

action might be pending if Stephen died prior to his 55th birthday, and [they] chose specific language to deal with that scenario." *Appellant's* Br. at 17. We agree.

Commentary in the Restatement (Third) of Trusts provides some insight as to the significance of the fact that Clause 5 mentions the possibility of dissolution. It states in relevant part:

> Failure to provide in the terms of trust for subsequent developments involved in a case reinforces an inference that the circumstances were not anticipated by the settlor.

Restatement (Third) of Trusts § 66 at 494 cmt. b (2003). The implication, then, is that the converse is true, *i.e.*, where a trust does, in fact, provide for subsequent developments, the circumstances *were* anticipated by the settlor. We find that such is the case here, where in Clause 5 the Trust mentions the possibility of a pending dissolution and directs that Carrie's contingent interest lapses if she and Stephen are not married or a dissolution is pending at the time of his death. This illustrates that Trustees, as then-Settlors, anticipated the possibility of a pending dissolution at the time of Stephen's death.

In very general terms, irrevocable trusts are most often created for tax savings purposes, for instance to reduce the size of the settlor's estate that would be subject to death taxes. *See,* Bogert, Trusts and Trustees § 234 *Irrevocable Trusts* at 56–57 (2d ed.1992). To gain the tax advantages, the settlor must permanently give up control of the gift property. *Id.* Thus, by their very nature, irrevocable trusts carry risks that relationships and values and circumstances may change after the date the Trust is funded, and those risks must be evaluated against the tax and other benefits received by the settlor(s). To ameliorate those risks, the Indiana legislature created Sections 24.4 and 26 to

provide an avenue by which a trustee may seek court modification of the trust due to circumstances not anticipated by the settlor. Clause 5 illustrates that the Chapmans as Settlors (now Trustees) anticipated the possibility of a pending dissolution at the time of Stephen's death, and included specific terms for distribution in that situation; they simply failed to provide for that same possibility during his lifetime. Because Trustees failed to prove that dissolution at the time of distribution was unforeseen or not anticipated, as required, we reverse the trial court's decision that modified the Trust and delayed distribution to Stephen until after the dissolution is final or any appeal therefrom.

Affirmed in part and reversed in part.[6]

NAJAM, J., and MATHIAS, J., concur.

---

6. Because we find determinative our holding concerning the requirement that events be "unforeseen," and the trial court's decision to the contrary requires reversal, we do not reach the trial court's findings and conclusions concerning the Trust's purpose and whether the modification was in Stephen's best interests.