**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Oct 30 2012, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT
SUSAN MOEDER:

**NATHAN S.J. WILLIAMS**
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE FIRST
MERCHANTS TRUST COMPANY, AS
GUARDIAN OF THE ESTATE OF JOHN
W. MOEDER AND JOHN W. MOEDER:

**JOSHUA D. HAGUE**
**ERIC A. MANTERFIELD**
Krieg DeVault LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| REVOCABLE TRUST OF ) | No. 49A02-1205-TR-377 |
| MARY RUTH MOEDER ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-0510-TR-41042

**October 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Susan Moeder appeals the trial court's order modifying the Mary Ruth Moeder Revocable Living Trust Agreement established by her mother, Mary Ruth Moeder ("Mother's Trust"). The trial court modified Mother's Trust so that the trustee could use trust funds for the maintenance of Susan's disabled brother John W. Moeder. Susan argues that there is no evidence of an unanticipated circumstance as required by statute that would support modification of Mother's Trust. We conclude that Mary Ruth would not have anticipated that John would not have the benefit of any of his share of the trust estate, and therefore we affirm the trial court's order.

**Facts and Procedural History**

On November 17, 1997, Mary Ruth established Mother's Trust. Section 3.03 of Mother's Trust provides that upon her death,

> The Trustee shall apply and distribute the net income and principal of each of the shares of the resulting Trust Estate, after giving effect to the section of this Trust Agreement entitled "Special Directives" to the following Beneficiaries in the indicated fractional shares:
>
> | | |
> |---|---|
> | John W. Moeder | ½ |
> | Susan R. Moeder | ½ |

Appellant's App. at 29. The "Special Directives of Mary Ruth Moeder" named John and Susan as "the natural objects of [her] affection." *Id*. at 41.

Although the record does not reveal when, John was determined to be incompetent pursuant to court order. There is no dispute that John is blind and receives Social Security Disability payments based on his blindness. John has a trust, the John W. Moeder Revocable

2

Trust ("John's Trust") that is separate from Mother's Trust. On September 12, 2006, in a separate cause number, First Merchants Trust Company was appointed as John's guardian. Tr. at 4. According to First Merchants' pleadings, John's disability payments are not based on his financial needs. Appellant's App. at 18.

On September 5, 2001, Mary Ruth died. On September 12, 2006, the trial court in this cause issued an order ("the 2006 Order") appointing Salin Bank and Trust Company as successor trustee to Mother's Trust and ordering the distribution of Susan's one-half-share of Mother's Trust assets to her.[1] John's share of Mother's Trust was not distributed and remained in Mother's Trust. Relevant to this appeal, the 2006 Order provided that "[o]ther than fees, no [Mother's Trust] assets or funds shall be distributed to or expended for the benefit of John W. Moeder unless and until all assets in [John's Trust] have been exhausted." *Id*. at 62. Pursuant to the terms of Mother's Trust, Susan is the contingent remainder beneficiary of John's share of Mother's Trust.

On August 17, 2011, First Merchants, as John's guardian, filed "Beneficiary's Petition to Modify Irrevocable[2] Trust by the Removal of all the Special Needs Language or, in the alternative, by the Removal of the First Paragraph of Special Needs Language and Modification of Prior Court Order." *Id*. at 15. The "Special Needs Language" to which this petition refers is Section 7.04 of Mother's Trust, which provides:

> Any Beneficiary who is determined by a court of competent jurisdiction
> to be incompetent shall not have any discretionary rights of a Beneficiary with

---

[1] There is nothing in the record before us regarding the 2006 Order other than the order itself.

[2] Pursuant to Section 1.09 of Mother's Trust, upon Mary's death, the designation of beneficiaries became irrevocable and not subject to amendment or modification. Appellant's App. at 27.

3

respect to this Trust, or to their share or portion thereof. The [T]rustee shall hold and maintain such incompetent Beneficiary's share of the Trust Estate and shall, in the Trustee's sole discretion, provide for such Beneficiary as that Trustee would provide for a minor. Notwithstanding the foregoing, *any Beneficiary who is diagnosed for the purposes of governmental benefits (as hereinafter delineated)*[3] *as being not competent or as being disabled, and who shall be entitled to governmental support and benefits by reason of such incompetency or disability, shall cease to be a Beneficiary of this Trust.* Likewise, they shall cease to be a Beneficiary if any share or portion of the principal or income of the Trust shall become subject to the claims of any governmental agency for costs or benefits, fees or charges.

The portion of the Trust Estate which, absent the provisions of this section, would have been the share of such incompetent or handicapped person shall be retained in trust for as long as that individual lives. *The Trustee, at his or her sole discretion, shall utilize such funds for the maintenance of that individual.* If such individual recovers from his or her incompetency or disability, and is no longer eligible for aid from any governmental agency, including costs or benefits, fees or charges, such individual shall be reinstated as a Beneficiary after 60 days from such recovery, and the allocation and distribution provisions as stated herein shall apply to that portion of the Trust Estate which is held by the Trustee subject to the foregoing provisions of this section. If said handicapped Beneficiary is no longer living and shall leave children then living, the deceased child's share shall pass to those children per stirpes. If there are no children, the share shall be allocated proportionately among the remaining Beneficiaries.

*Id*. at 37 (emphases added).

In its petition, First Merchants asserted that the language in the first paragraph providing that an incompetent or disabled beneficiary receiving governmental benefits by reason of such incompetency or disability ceases to be a "Beneficiary of the Trust" was inconsistent with and contradictory to that in the second paragraph authorizing the trustee to utilize trust funds for the maintenance of that individual. *Id*. at 18. First Merchants also

---

[3] No governmental benefits are later delineated in Mother's Trust.

asserted that Mary Ruth included Section 7.04 in Mother's Trust under the mistaken belief that John's eligibility for Social Security Disability payments might be jeopardized if he were to receive his inheritance outright. Susan filed a response denying that Mary Ruth's inclusion of Section 7.04 was a mistake.

On December 12, 2011, First Merchants filed a petition to modify the 2006 Order, in which it requested that the trial court modify the language ordering that no Mother's Trust assets or funds be distributed for John's benefit until all the assets in John's Trust are exhausted. First Merchants asserted that only $40,600 remained in John's Trust, that John's medical conditions had required him to miss work and he had exhausted his sick days, vacation days, and personal days, that John had earned only $5000 during the first six months of 2011, and that John needed funds for the following:

| | |
|---|---|
| House repairs | $ 550.00 |
| Two magnifiers | 1,000.00 |
| Sam's Club credit card | 12,500.00 |
| Credit Union credit card | 3,500.00 |
| Computer software update to listen to emails | 750.00 |

*Id*. at 9. First Merchants asserted that Mother's Trust had approximately $778,000 and that Salin Bank had indicated that it would not object to the disbursement of funds from Mother's Trust to cover John's expenses if the trial court modified the 2006 Order. First Merchants asked that Salin Bank be ordered to disburse funds from Mother's Trust to pay for the listed expenses and to disburse $1500 per month to John to supplement his income.

On December 23, 2011, Susan filed a motion for summary judgment and designation of evidence. First Merchants did not file a responsive pleading or designate any evidence in response to Susan's summary judgment motion.

On February 1, 2012, the trial court held a hearing to consider First Merchants' petition to modify the 2006 Order. No evidence was presented. At the conclusion of the hearing, the trial court granted the petition and issued an order ("the February 2012 Order") granting the requested relief. *Id.* at 5.

On February 29, 2012, Susan filed a motion to correct error, arguing that pursuant to Section 7.04 of Mother's Trust, John was no longer a beneficiary of Mother's Trust and that the February 2012 Order was in error for ordering distributions from Mother's Trust to John. On March 5, 2012, First Merchants filed a response to the motion to correct error.

On March 20, 2012, First Merchants filed an amended petition to modify Mother's Trust, again asserting that the language in the first paragraph of Section 7.04, providing that an incompetent or disabled beneficiary receiving governmental benefits ceases to be a "Beneficiary of the Trust," was inconsistent with and contradictory to that in the second paragraph authorizing the trustee to utilize trust funds for the maintenance of that individual. However, First Merchants abandoned its prior justification for modification based on mistaken belief and instead argued that modification was proper due to unanticipated circumstances. In its amended petition, First Merchants requested that the first paragraph of Section 7.04 be stricken from Mother's Trust so that discretionary distributions to John could

be made in accordance with the second paragraph. Susan filed a response to the amended petition.

On April 10, 2012, the trial court held a hearing on Susan's motion for summary judgment, Susan's motion to correct error, and First Merchants' amended petition to modify Mother's Trust. No evidence was presented at the hearing. At the conclusion of the hearing, the trial court took the motions under advisement.

On April 17, 2012, the trial court issued an order ("the April 2012 Order") denying Susan's motion for summary judgment and motion to correct error. The trial court granted First Merchants' amended petition to modify Mothers' Trust and ordered that the first paragraph of Section 7.04 be removed so "that discretionary distributions may be made to John W. Moeder in accordance with the second paragraph of Section 7.04 of [Mother's] Trust." *Id.* at 6.

**Discussion and Decision**

Susan appeals the April 2012 Order, arguing that the trial court erred in granting First Merchants' amended petition to modify Mother's Trust, denying her motion for summary judgment, and denying her motion to correct error. The April 2012 Order is a general judgment. We may affirm a general judgment on any legal theory supported by the evidence. *Humphries v. Ables*, 789 N.E.2d 1025, 1030 (Ind. Ct. App. 2003).

In its amended petition to modify Mother's Trust, First Merchants relied on Indiana Code Sections 30-4-3-24.4 and 30-4-3-26, which permit a court to modify or deviate from the terms of a trust based on circumstances that were not anticipated by the settlor. The trial

7

court granted First Merchants' petition and ordered that the first paragraph of Section 7.04 of Mother's Trust be removed. Susan argues that there is no evidence to support the trial court's modification of Mother's Trust under either Section 30-4-3-24.4 or Section 30-4-3-26.

Indiana Code Section 30-4-3-24.4(a), entitled "Modification of terms" provides,

> The court may modify the administrative or dispositive terms of a trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.

As this Court has previously recognized, "Section 24.4 is patterned after Section 412(a) of the Uniform Trust Code ('UTC') which, in turn, is taken from the Restatement (Third) of Trusts § 66(1) [(2003)]." *In re Stephen L. Chapman Irrevocable Trust Agreement*, 953 N.E.2d 573, 580-81 (Ind. Ct. App. 2011), *trans. denied* (2012). The comments to Section 412(a) of the UTC provide some insight into the application of Section 24.4:

> Subsection (a) allows a court to modify the dispositive provisions of the trust as well as its administrative terms. For example, modification of the dispositive provisions to increase support of a beneficiary might be appropriate if the beneficiary has become unable to provide for support due to poor health or serious injury. …. While it is necessary that there be circumstances not anticipated by the settlor before the court may grant relief under subsection (a), the circumstances may have been in existence when the trust was created.

Indiana Code Section 30-4-3-26(a), which addresses what is commonly referred to as "equitable deviation" provides,

> Upon petition by the trustee or a beneficiary, the court shall direct or permit the trustee to deviate from a term of the trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. In that case, if necessary to carry out the purposes of the trust, the court may direct or

8

permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust, or may prohibit the trustee from performing acts required by the terms of the trust.

Section 26(a) follows Section 167 of the Restatement (Second) of Trusts (1959). "Whereas Section 24.4 requires that modification will 'further the purpose of the trust,' Section 26(a) requires that the change be necessary to carry out the purpose of the trust because compliance would defeat or substantially impair the accomplishment of the purpose of the trust." *Chapman*, 953 N.E.2d at 581.[4]

To apply either Section 24.4(a) or Section 26(a), a court must determine the "purposes of the trust" and determine whether there are circumstances unanticipated by the settlor. In so doing, we observe that we are not "'at liberty to rewrite the trust agreement any more than [we are] at liberty to rewrite contracts.'" *Paloutzian v. Taggart*, 931 N.E.2d 921, 925 (Ind. Ct. App. 2010) (quoting *Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 565-66 (Ind. 1991)). "One of the cardinal principles of trusts and estates law is that the testator or settlor has the right to arrange for the distribution of his estate as he sees fit." *Id.* The primary purpose of the court in examining a trust instrument is to ascertain and give effect to the settlor's intention. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 531 (Ind. 2006). "[W]e attempt to discern the settlor's intent in light of the facts and circumstances existing at the time the instrument was executed." *Paloutzian*, 931 N.E.2d at 925.

---

[4] Susan also argues that there was insufficient evidence of mistake to support reformation of Mother's Trust. *See Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1200 (Ind. 2008) (stating that a court may reform a trust based on mistake upon clear and convincing evidence of the mistake and the original intent of the settlor). We need not address whether reformation of Mother's Trust is proper because First Merchants conceded below that it did not have evidence of mistake. Tr. at 44.

In the case at bar, the language of Mother's Trust reveals that its primary purpose, that is, the very reason for its creation was to provide for Mary Ruth during her lifetime and to distribute the assets in Mother's Trust upon her death equally to John and Susan. Appellant's App. at 27, 29. There can be no reasonable dispute that Mary intended for John and Susan to receive equal shares of Mother's Trust estate pursuant to Section 3.03. Mother's Trust also contains provisions to protect trust assets. Section 7.04 is one such provision. Its purpose was to shield Mother's Trust assets from being included in the estate of a handicapped or disabled beneficiary so that the individual would not be deemed ineligible for need-based government benefits and to insure that Mother's Trust assets would not become subject to government claims for costs, benefits, fees, or charges. To that end, the sentence "any Beneficiary who is diagnosed for the purposes of governmental benefits (as hereinafter delineated) as being not competent or as being disabled, and who shall be entitled to governmental support and benefits by reason of such incompetency or disability, shall cease to be a Beneficiary of this Trust" was included.

However, Section 7.04 in its entirety indicates that the termination of the handicapped or disabled individual's beneficiary status is not intended to utterly deprive the handicapped or disabled person of his or her use of Mother's Trust funds. The second paragraph of Section 7.04 begins:

> *The portion of the Trust Estate which, absent the provisions of this section*, would have been the share of such incompetent or handicapped person *shall be retained in trust* for as long as that individual lives. *The Trustee*, at his or her sole discretion, *shall utilize such funds* for the maintenance of that individual.

*Id.* at 37 (emphases added). Yet, Susan argues that due to the termination of John's beneficiary status pursuant to the first paragraph of Section 7.04, the Trustee may not utilize trust funds for John's maintenance pursuant to the second paragraph even though John has been unable to work due to illness and does not have enough money to support himself. She contends that modifying Mother's Trust so that the trustee may utilize trust funds for John's maintenance is improper because the termination of John's beneficiary status is a circumstance that Mary Ruth anticipated.

In support of her argument, Susan relies on *Chapman*, in which the court found that the dissolution of the beneficiary's marriage was not an unforeseen circumstance warranting modification of the trust's date of distribution. 953 N.E.2d at 583. In that case, the trust instrument provided that the trust assets would be distributed to the beneficiary on his fifty-fifth birthday. The beneficiary married, but prior to his fifty-fifth birthday, his spouse filed for divorce. The settlors petitioned to modify the trust to change the date of distribution. The *Chapman* court noted that the trust instrument contained language that recognized the possibility of a dissolution and directed that if the beneficiary and his spouse were not married or a dissolution was pending at the time of the beneficiary's death, the spouse's contingent interest would lapse. The *Chapman* court concluded that the language illustrated that the settlors anticipated the possibility of a pending dissolution. Although the settlors included specific terms for distribution at the time of the beneficiary's death, they simply failed to provide for a pending dissolution during the beneficiary's lifetime. Accordingly, the court concluded that dissolution of marriage was not an unanticipated circumstance. *Id.*

*Chapman* is distinguishable from the case at bar. Here, Mother's Trust does not fail to address the situation where a beneficiary is entitled to governmental benefits due to incompetency or disability. In that event, Mother's Trust states that the individual ceases to be a beneficiary. However, Mother's Trust also explicitly states that the portion of Mother's Trust that would have been the share of the incompetent or handicapped person had he or she not ceased to be a beneficiary shall be retained in trust and may be used for the maintenance of that individual. Susan simply wants to ignore that language. Given that the very purpose of Mother's Trust was to benefit John with half of the assets in Mother's Trust when Mary Ruth died, we have no hesitation in concluding that any failure to administer Mother's Trust in a manner that honors its provision authorizing the trustee to utilize trust funds for John's maintenance is a circumstance that was not anticipated by Mary Ruth.

As noted in the commentary to Section 412(a) of the UTC, "modification of the dispositive provisions to increase support of a beneficiary might be appropriate if the beneficiary has become unable to provide for support due to poor health or serious injury." The trial court's modification is proper under either Section 24.4(a) or Section 26(a), as it will "further the purposes of the trust" and because "compliance would defeat or substantially impair the accomplishment of the purposes of the trust." Accordingly, we conclude that the trial court properly granted First Merchants' amended petition to modify Mother's Trust.[5]

---

[5] Susan also argues that the trial court's February 2012 Order is contrary to Section 7.02 of Mother's Trust. However, she provides no citation to the record showing that she presented that argument to the trial court, and our review of the record does not reveal that she presented such argument. Therefore, this argument is waived. *See Tamko Roofing Prods., Inc. v. Dilloway*, 865 N.E.2d 1074, 1080 (Ind. Ct. App. 2007) ("As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court.").

Because we have concluded that there are grounds to uphold the trial court's grant of First Merchants' amended petition to modify Mother's Trust, it follows that the trial court did not err in denying Susan's summary judgment motion. Susan also challenges the trial court's denial of her motion to correct error based on the February 2012 Order. The February 2012 Order granted First Merchants' motion to modify prior order by striking the language ordering that no Mother's Trust assets or funds be distributed for John's benefit until all the assets in John's Trust are exhausted, and ordering Salin Trust to disburse funds to pay for the listed expenses and to disburse $1500 per month to John to supplement his income. We observe that the relief granted by the trial court in its February 2012 Order is consistent with its subsequent modification of Mother's Trust. Therefore, we conclude that the trial court properly granted First Merchants' motion to modify prior order and properly denied Susan's motion to correct error. We therefore affirm the trial court's April 2012 Order and the February 2012 Order in all respects.

Affirmed.

RILEY, J., and BAILEY, J., concur.

13